# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-17-00539-CR

**Christopher Harris, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-15-301782, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING[1]

### O P I N I O N

A jury convicted Christopher Harris of the first-degree felony offense of murder and assessed punishment at life imprisonment. *See* Tex. Penal Code §§ 12.32(a), 19.02(b)(1), (c). The district court rendered judgment consistent with the jury's verdict. In three issues on appeal, Harris contends that the district court abused its discretion by: (1) overruling his challenge for cause against one venire member and declining to grant Harris an extra peremptory challenge to strike another venire member; (2) overruling his objection to the admission of extraneous bad act evidence and preventing him from introducing evidence that the bad act had been "no-billed" by a grand jury; and (3) overruling his objections to punishment-phase testimony from the complainant of the bad act. We will affirm the district court's judgment of conviction.

---

[1] Judge Brenda Kennedy presided over voir dire and the punishment phase of trial and signed the judgment of conviction. Judge Wilford Flowers presided over the guilt-innocence phase of trial.

## BACKGROUND[2]

A jury convicted Harris of murdering Byron James Roberson in an early-morning attack at Roberson's house. The medical examiner determined that Roberson sustained twenty-four stab wounds, eleven of those to his neck and head. Harris was one of several people living in Roberson's house at the time. The jury heard testimony from others who were in the house when the murder occurred—Roberson's adult son Diamond Roberson,[3] Delphia "Liz" White, Harris, and Diamond's friend Rashard Rogers.

Harris testified that he had been renting the living room of Roberson's house for a few months and planned to stay there temporarily. In the hours before Roberson's death, Harris stated that he came home from work and relaxed in the living room, smoking marijuana, using cocaine, playing video games, and watching television. Harris stated that two friends came to visit him but both left the house before midnight. Harris also recalled that Rogers came to visit Diamond.

Harris testified that later that evening, another friend of Diamond's and a man that Harris did not know came to the front door asking for Diamond. Harris closed the door and called Diamond, who came downstairs and opened the door but saw no one. Harris suggested that Diamond check the back door. Diamond opened the back door, looked left and right, saw no one, closed the door, and headed back toward the stairs.

---

[2] The facts are summarized from the testimony and exhibits admitted into evidence at trial.

[3] For clarity, we refer to the victim's son by his first name.

Harris then stated that he watched "in shock" as an unknown assailant[4]—who looked like Harris, was about his height, and had similar dreadlocks—appeared behind Diamond and stabbed him in the neck with a knife. According to Harris, the assailant ran past him and up the stairs, where the assailant stabbed Rogers and Roberson. Harris testified that he also went upstairs, opened the door to Roberson's bedroom, and saw the assailant stabbing Roberson. Harris stated that Roberson ran toward the bedroom door as the assailant was chasing and stabbing him from behind, and that Roberson yelled for White to call 911. Harris said that his left hand took one of the stabs intended for Roberson as the assailant ran past him. Harris recalled that when the assailant was distracted by "someone else over to the right," Roberson ran downstairs. Harris heard a commotion in the hallway near the bedrooms and Rogers yelling. Harris then saw Rogers running downstairs with the assailant following him out the front door.

Harris testified that he went to the kitchen looking for a towel for his bleeding hand, then went outside and saw the assailant attacking Roberson a few houses away. Harris also saw Roberson fall. Harris testified that he chased the assailant down the street, around a corner, and over a fence into a backyard. There the assailant stabbed Harris's right hand and leg and then jumped over the fence. Harris said, "as far as [he] can remember," he pulled the knife out of his own leg and "blacked out." When he awoke, he walked through the gate to the police, in the direction of their vehicles' flashing lights. Harris was no longer wearing his shorts, t-shirt, or shoes, but he testified that he did not remember removing his clothing. He did not tell police about the assailant's attacks on him, on the others at the house, or on Roberson down the street. Harris acknowledged that he

---

[4] This was not one of the men that Harris said he had seen earlier at the front door.

never: yelled for help, tried to assist Roberson or Diamond, checked on White, or called 911. Harris denied killing Roberson. He also denied attacking Roberson, Diamond, and Rogers.

Diamond and Rogers each testified that they were "positive" Harris stabbed them. They also stated that Harris's attacks on them were unprovoked. Diamond testified that Harris attacked him from behind, stabbing him in the neck. Diamond fell to the kitchen floor, and Harris stabbed him again in the back of the neck before running upstairs. Diamond was able to get upstairs and yell to the others to keep their doors closed because Harris was stabbing people. Diamond stated that he collapsed at the top of the stairs and lost consciousness because of his blood loss.

Rogers testified that he heard Diamond yelling not to come out of the room, but he did anyway, and he saw Diamond at the top of the stairs with his neck cut open. Rogers went to Roberson's bedroom where he saw a figure with long dreadlocks that appeared to be Harris, who had his arm at an angle holding something. Harris then "ran up on" Rogers saying, "I'm going to kill all of you all," and stabbed Rogers with a knife. Rogers sustained stab wounds to his cheek and the back of his head. He ran out the front door with Harris in pursuit. Rogers began knocking on doors for help. He testified that he passed out on the front porch of a house due to his blood loss.

One of Roberson's neighbors testified that he woke to the sound of his doorbell ringing repeatedly at about 1:00 a.m. He opened the front door, heard a commotion in the driveway, and saw blood on his front porch. He closed the door and asked his wife to call 911. Looking out a window toward his front yard, he saw a larger man attacking another. The neighbor "saw a man go down," and the attacker ran away. The neighbor found Roberson's body in the front yard. Several hours later, the neighbor saw a man walking toward police. He recognized the man's

4

physical appearance as resembling the man who had run from his front yard earlier that night and whom he had seen making "stabbing motions" with the victim (later identified as Roberson).

Police recovered Harris's bloodstained t-shirt, shorts, shoes, and a knife from another neighbor's backyard. Roberson could not be excluded as a contributor of the DNA detected in the bloodstains on the front of Harris's shoe. Harris and Roberson could not be excluded as contributors of the DNA detected in the bloodstains on Harris's t-shirt and on the handle and blade of the knife. Police testified that hours after they began their investigation, Harris walked up seeking help for the wounds to his hands. He was dressed only in underwear and socks. One of the officers at the scene recorded her conversation with Harris, including her asking him how he got the cuts on his hands. Harris replied, "I remember [indistinct] this one with Diamond and this one with Byron."

The jury heard evidence, over Harris's objection, that Harris had committed a prior bad act by attacking Jaime Sifuentez with a box cutter. This evidence was introduced to challenge testimony from Harris's mother that Harris was not a confrontational person and was "usually very peaceful." Harris sought to introduce evidence that the Sifuentez incident was "no-billed" by a grand jury, but the district court sustained the State's objection and excluded that evidence. At the conclusion of the guilt-innocence phase of trial, the jury found Harris guilty of murder and found that he used a deadly weapon in committing the offense. During punishment, the State called Sifuentez, who testified about the prior bad act over Harris's objection that Sifuentez was not on the State's witness list. The jury assessed Harris's punishment at life imprisonment, and the court rendered judgment on the jury's verdict. Harris filed a motion for new trial that was overruled by operation of law. This appeal followed.

5

**Jury selection**

In his first issue, Harris contends that the district court erred by overruling his challenge for cause against venireperson number 28 and by declining to grant him an extra peremptory challenge to strike venireperson number 51. To preserve a complaint about the trial court's denial of a challenge for cause, a party must show that he: (1) used all of his peremptory strikes; (2) asked for and was refused additional peremptory strikes; and (3) was then forced to take an identified, objectionable juror whom the party would not have otherwise accepted had the trial court granted his challenge for cause (or had the trial court granted him an additional peremptory challenge to strike the juror). *Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016). Additionally, a party must show that it made the trial court aware of that complaint "at a time and in a manner so that it can be corrected." *Loredo v. State*, 159 S.W.3d 920, 923 (Tex. Crim. App. 2004); *Redfearn v. State*, No. 2-09-270-CR, 2010 Tex. App. LEXIS 7018, at *4 (Tex. App.—Fort Worth Aug. 26, 2010, pet. ref'd) (mem. op., not designated for publication).

Here however, Harris did not complain until after he had already exercised his peremptory challenges and provided his strike list to the clerk, the clerk had called the members of the jury and the jury was seated, and the court had excused the rest of the venire. *See* Tex. Code Crim. Proc. arts. 35.25 (requiring parties in noncapital-felony cases, and in capital cases where death penalty is not sought, to strike from clerk's list names of jurors that party wants to challenge peremptorily), 35.26(a) (requiring parties to deliver their lists to clerk, who will call names of first twelve not struck, which "shall be the jury" in district court); *McBean v. State*, 167 S.W.3d 334, 337-

6

38 (Tex. App.—Amarillo 2004, pet. ref'd) (concluding, on similar facts, that party failed to preserve any error in court's denial of party's challenge for cause). Harris's complaint about the effect of the denial of the challenge for cause and his request for an additional peremptory challenge—made only after the jury had been seated and the rest of the venire had been excused—was untimely. *See* Tex. Code Crim. Proc. arts. 35.25, 35.26(a) (requiring parties to deliver their lists to clerk, who will call names of first twelve not struck, which "shall be the jury" in district court); *McBean*, 167 S.W.3d 334, 338 n.3 ("Nor does it seem to us such process would accord fair treatment to the opposing party who must exercise peremptory challenges without benefit of knowing which venire members will be on the jury."), 339; *see also Leach v. State*, No. 01-04-00903-CR, 2008 Tex. App. LEXIS 6684, at *23 (Tex. App.—Houston [1st Dist.] Sept. 4, 2008, no pet.) (mem. op., not designated for publication).

Accordingly, Harris failed to preserve his complaint about the court's rulings as to his challenge for cause and his request for an additional peremptory challenge. *See* Tex. R. App. P. 33.1(a)(1); *McBean*, 167 S.W.3d at 339; *see also Redfearn*, 2010 Tex. App. LEXIS 7018, at *7-8; *Leach*, 2008 Tex. App. LEXIS 6684, at *24. We overrule Harris's first issue.

**Evidence concerning extraneous bad act**

In his second issue, Harris makes two complaints: first, that the district court erred by overruling his objection to the admission of extraneous bad act evidence; and second, by preventing him from introducing evidence that the bad act had been "no-billed" by a grand jury. Use of evidence concerning a person's extraneous bad acts is set forth in Texas Rule of Evidence 404(b), which provides that

7

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Tex. R. Evid. 404(b). We review a trial court's ruling on the admissibility of Rule 404(b) evidence under an abuse-of-discretion standard. *Dabney v. State*, 492 S.W.3d 309, 318 (Tex. Crim. App. 2016). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *see Dabney*, 492 S.W.3d at 318.

Before trial, the State provided notice of its intent to present the jury with evidence about an extraneous bad act. *See* Tex. R. Evid. 404(b). During the guilt-innocence phase of trial, Harris's mother Laura Zavala testified on direct examination for the defense that Harris is not a confrontational person and that he "is usually very peaceful." After a hearing outside the presence of the jury, the district court allowed the State to ask Zavala whether she was aware that Harris attacked a person named Jaime Sifuentez with a box cutter and whether having that information would change her opinion of Harris:

| | |
|---|---|
| Prosecutor: | Good morning. On direct examination you testified that you had the opinion that your son Christopher Harris had the character of peacefulness; is that correct? |
| Zavala: | Yes. |
| Prosecutor: | And you also testified that you were of the opinion that he was non-confrontational? |

8

| Zavala: | Yes. |

| Prosecutor: | Are you aware of the fact that your son Christopher Harris attacked a Jaime Sifuentez on October 24, 2014, with a box cutter? |

| Zavala: | No. |

| Prosecutor: | If you were to learn that he—your son Christopher Harris attacked Jaime Sifuentez with a box cutter on October 24, 2014, would that change your opinion that your son is a peaceful person? |

| Zavala: | No. |

| Prosecutor: | And if you had that information that he attacked Jaime Sifuentez with a box cutter, would that change your opinion that he is a non-confrontational person? |

| Zavala: | No. |

| Prosecutor: | Pass the witness, Your Honor. |

On redirect, Zavala acknowledged knowing that Harris had been charged in that incident:

| Defense counsel: | Ms. Zavala, the case that the State is referring to, you're aware that that case was presented to a grand jury and the grand jury— |

| Prosecutor: | Objection, Your Honor. |

| The Court: | Sustained. |

. . . .

| Defense counsel: | Were you aware that Chris was charged in that incident? |

| Zavala: | Yes. |

9

| Defense counsel: | And what was your understanding as to the end result of that charge? |
| --- | --- |
| Prosecutor: | Objection. |
| The Court: | Sustained. |

The court's charge at the conclusion of the guilt-innocence phase of trial provided the following instruction to the jury about Zavala's testimony:

> You are instructed that if there is evidence before you to the effect that Laura Zavala, a witness for the defendant, had heard about other offenses on the part of the defendant, if any, then such evidence may only be considered by you if you consider it at all for the purpose of testing, if it does, the knowledge of Laura Zavala as to the defendant's reputation and the weight to be given to their testimony, and you must not consider such evidence for any other purpose.

### 1. Admission of extraneous bad act evidence

Harris contends that the district court erred by overruling his objection to the admission of extraneous bad act evidence involving Sifuentez. Under Rules 404 and 405 of the Texas Rules of Evidence, if the defendant offers evidence of his good character, the prosecution can introduce its own character evidence to rebut the implications of the defendant's character evidence. *Harrison v. State*, 241 S.W.3d 23, 27 (Tex. Crim. App. 2007); *Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002); *see* Tex. R. Evid. 404(a)(2)(A) (providing that "[i]n a criminal case, a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecution may offer evidence to rebut it"), 405(a)(2)(B) (providing that "[w]hen a person's character or character trait is an essential element of a charge, claim, or defense, the character or trait may also be proved by relevant specific instances of the person's conduct"). "The purpose of

10

permitting [character witness] cross-examination is not to discredit the person whose character is in issue, but rather to discredit the testimony of the character witness." *Harrison*, 241 S.W.3d at 25. Cross-examination rebuttal evidence may be elicited in the form of "have you heard" or "were you aware" questions about specific instances of conduct inconsistent with the character trait brought into issue. *Id.* Here, Harris has not shown that the district court abused its discretion by overruling his objection to the State asking Zavala—after she testified that Harris was not a confrontational person and that he "is usually very peaceful"—whether she was aware that he attacked Sifuentez. *See id.* at 27 (concluding that trial court did not abuse its discretion by allowing prosecution to rebut character evidence—introduced by defense witness who testified that defendant was "good" and "sweet" person—with evidence of defendant's prior assault convictions and citations); *see also Gonzalez*, 544 S.W.3d at 370.

However, even when evidence of an extraneous bad act is admissible under Rules 404 and 405, it may be excluded as unfairly prejudicial under Rule 403. During a hearing outside the presence of the jury, Harris objected that allowing the State to question Zavala about the extraneous bad act would violate Rule 403 "because of similar accusations in that case to this one," which would be "unduly prejudicial to the jury and would influence the jury in the incorrect manner."

Texas Rule of Evidence 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; by considerations of undue delay; or by needless presentation of cumulative evidence. *See* Tex. R. Evid. 403. When conducting a Rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the

11

proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). These factors may blend together in practice. *Id*. at 642.

Here, Zavala offered the jury her opinion that Harris was a peaceful and non-confrontational person. The jury had heard similar testimony from White, although she admitted that she did not know him well. The district court could have concluded that the State needed to ask Zavala whether she was aware of the incident involving Sifuentez to test how well she knew him and the credibility of her opinion if she knew about conduct inconsistent with the traits about which she testified. *See Wilson*, 71 S.W.3d at 350 n.4. The district court's limiting instruction in the charge about Zavala's testimony minimized any risk that the jury would consider the substance of her questioning for any improper purpose or give it undue weight. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011) (noting that jury is presumed to have understood and followed trial court's jury-charge instructions absent evidence to the contrary); *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996) (noting that impermissible inference of character conformity can be minimized through limiting instruction). The incident Zavala was asked about was not confusing or technical in nature and would not tend to mislead the jury, which weighs in favor of admission of the evidence. *See Gigliobianco*, 210 S.W.3d at 641 (noting that scientific evidence is of type that

12

"might mislead a jury that is not properly equipped to judge the probative force of the evidence"). To the extent Harris complains that the jury was misled about criminal charges resulting from the Sifuentez incident, we note that the defense—and not the State—was the source of that information during Zavala's questioning on redirect. Finally, the court could have reasonably determined, based on the hearing outside the presence of the jury before Zavala testified, that the State's questioning of Zavala about the Sifuentez incident would not consume an inordinate amount of time and would not be repetitive of evidence already admitted. In fact, the jury heard only three questions about the Sifuentez incident during the State's cross-examination. Accordingly, Harris has not shown that the district court abused its discretion by implicitly determining that the balance of the Rule 403 factors favored allowing the State's questioning of Zavala about the extraneous bad act. *See id*. at 641-42.

### 2. Exclusion of evidence of no-bill

Within his second issue, Harris also complains that the district court abused its discretion by excluding evidence that a grand jury had "no-billed" him as to the Sifuentez assault. Harris contends that because the assault resulted in a no-bill, the assault did not qualify for admission as an extraneous bad act under Rule 404(b). He further contends that allowing evidence of that assault—without also admitting evidence of the no-bill—violated Rule 403 because its probative value was greatly outweighed by its potential prejudice and gave the jury the misimpression that Harris had been charged with an offense for stabbing Sifuentez with a boxcutter.

A grand jury has the duty to determine whether evidence exists to formally charge a person with an offense. *See Rachal v. State*, 917 S.W.2d 799, 807 (Tex. Crim. App. 1996). A no-bill from a grand jury is merely a finding that the specific evidence brought before that particular grand

13

jury did not convince them to formally charge the accused with the offense alleged. *Id*.; *see Elam v. State*, 47 S.W.2d 279, 279-80 (Tex. Crim. App. 1932) (concluding that admission of grand jury's no-bill for prior altercation between victim and defendant improperly presented jury with grand jury's opinion as to merits of disputed issue, i.e., whether defendant was aggressor and acted in self-defense).

Furthermore, there was no need to correct a "misimpression" about the assault when as here, the State was not attempting to prove to the jury that Harris committed the extraneous bad act, but only testing the weight of character testimony from Zavala. *See Wilson*, 71 S.W.3d at 351 & nn.5-6 (citing commentary to Federal Rule of Evidence 405(a)—which is nearly identical to Texas Rule of Evidence 405(a)—and noting that because purpose of State's questions was to test witness's familiarity with defendant, "not only was the State not required to prove to the jury that the acts actually occurred, but it would have been improper for the State to attempt to do so"); *Drone v. State*, 906 S.W.2d 608, 616 (Tex. App.—Austin 1995, pet. ref'd) (noting State's questioning of defense witness about defendant's involvement in prior stabbing and assault was not attempt to prove his guilt of such unadjudicated offenses but to test weight of character testimony from defense witness). Accordingly, Harris has not shown that the district court's ruling excluding evidence of the no-bill was outside the zone of reasonable disagreement. *See Gonzalez*, 544 S.W.3d at 370.

Even if we were to assume that the court erred by excluding evidence that a grand jury had "no-billed" Harris for the Sifuentez assault, Harris has not demonstrated harm requiring reversal. *See* Tex. R. App. P. 44.2(b) (providing that nonconstitutional error that does not affect substantial rights must be disregarded); *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014) ("A

14

substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."). In determining the likelihood that an error adversely affected a jury's decision, we consider everything in the record. *Schmutz*, 440 S.W.3d at 39. Significant factors include the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case, and may include whether the State emphasized the error and whether there was overwhelming evidence of guilt. *Id*.

Here, the State's questioning of Zavala did not result in the admission of substantive evidence regarding the Sifuentez incident, and after Zavala denied awareness of that incident, the State did not refer to it again during the guilt-innocence phase. The jury had strong proof of Harris's guilt in this case, including testimony from Diamond, Rogers, and the neighbor who witnessed Roberson's attack, as well as corroborating DNA evidence on Harris's bloodstained shoe, t-shirt, and the handle and blade of the knife. Thus, if there were any error in the court's evidentiary ruling because of a misimpression from the exclusion of Harris's no bill, considering everything in this record, it is unlikely that the jury's decision was adversely affected by such error. *See id.* We overrule Harris's second issue.

**Punishment-phase testimony from person not on State's witness list**

In his third issue, Harris contends that the district court erred by overruling his objection to punishment-phase testimony from Sifuentez, who was not on the State's witness list. Harris asserts that Sifuentez gave unfairly prejudicial testimony and that the State's nondisclosure of Sifuentez as a witness prevented Harris from adequately preparing for sentencing. We review a trial court's decision to allow testimony from a person who is not on the State's witness list under

15

an abuse-of-discretion standard. *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000); *Hightower v. State*, 629 S.W.2d 920, 925 (Tex. Crim. App. 1981); *Rainey v. State*, 949 S.W.2d 537, 544 (Tex. App.—Austin 1997, pet. ref'd). When a trial court allows testimony from a witness who does not appear on the State's witness list, we consider whether the prosecutor's actions constituted bad faith and whether the defendant could have reasonably anticipated that the witness would have testified despite the lack of notice. *Wood*, 18 S.W.3d at 649; *Hightower*, 629 S.W.2d at 925; *Rainey*, 949 S.W.2d at 544.

### 1. Reasonable anticipation that Sifuentez would testify during punishment

Here, Harris does not contend that the State acted in bad faith; rather, he contends that he "had no way of knowing that Mr. Sifuentez would testify at trial." We disagree. As Harris acknowledges (and conceded at trial), the State: (1) gave notice of its intention to introduce evidence of the prior assault against Sifuentez; (2) provided Harris with an offense report identifying Sifuentez as the complainant in that assault; and (3) provided Harris with Sifuentez's criminal history in response to Harris's "Motion for Discovery of the Arrest and Conviction Records of State's Witnesses." Under these circumstances, Harris could have reasonably anticipated that the State would call Sifuentez as a witness. *See, e.g.*, *Lemasurier v. State*, 91 S.W.3d 897, 900-01 (Tex. App.—Fort Worth 2002, pet. ref'd) (concluding that counsel should have reasonably anticipated witness's testimony when witness's report had been part of prosecution's file and counsel was aware of report through his own review of that file); *see also Fox v. State*, No. 04-15-00618-CR, 2017 Tex. App. LEXIS 150, at *7 (Tex. App.—San Antonio Jan. 11, 2017, no pet.) (mem. op., not designated for publication) (concluding that defendant could have reasonably anticipated that State

16

would call individuals listed in offense report provided to defense in discovery); *Garcia v. State*, No. 04-00-00005-CR, 2001 Tex. App. LEXIS 808, at *3 (Tex. App.—San Antonio Feb. 7, 2001, no pet.) (not designated for publication) (concluding that because State provided prior notice of its intention to introduce evidence of extraneous offense, defendant could have reasonably anticipated that State would call witness to that extraneous offense despite being omitted from State's witness list).

### 2. Sifuentez's testimony during punishment was not unfairly prejudicial

Within his third issue, Harris also contends that the district court erred by overruling his objection to Sifuentez's testimony during punishment about the extraneous bad act because it was "unduly prejudicial" and a violation of Rule 403.

Article 37.07 of the Texas Code of Criminal Procedure authorizes consideration of several factors during punishment, including a defendant's prior criminal record, the circumstances of the offense for which he is being tried, his general reputation, and his character. Tex. Code Crim. Proc. art. 37.07, § 3(a)(1); *see Sims v. State*, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (noting that "[t]he Legislature has expressly provided that 'relevant' punishment evidence includes, but is not limited to, both character evidence in the form of opinion testimony as well as extraneous-offense evidence"). As this Court has noted, some extraneous offense evidence admissible under article 37.07, section 3(a) may be subject to a Rule 403 objection. *Smith v. State*, 899 S.W.2d 31, 34 (Tex. App.—Austin 1995, pet. ref'd) ("The legislature has determined that unadjudicated offense evidence may be considered in assessing punishment. In a particular case, such evidence may be excluded under rule 403 if, under the circumstances of that case, the relevance of the evidence to the punishment decision is outweighed by other considerations arguing against its admission."). A

17

Rule 403 analysis requires balancing: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641-42.

Here, the charged offense and the extraneous bad act, which occurred less than ten months apart, were similar in several ways—the victims sustained cuts to areas of the neck and head, made with a type of knife, while in close proximity to their attacker, and seemingly without provocation. Thus, the extraneous bad act had probative value because it showed Harris's pattern of conduct. Given that the extraneous bad act established a pattern of conduct, and that a defendant's character and criminal history are legitimate concerns in sentencing, consideration by a jury of the extraneous bad act would not suggest decision on an improper basis or distract from the main issue. Further, given the high probative value of this evidence and the broad punishment range, the State's need for this evidence was high. The district court's limiting instruction in the charge minimized any risk that the jury would have considered the extraneous bad act for an improper purpose or given it undue weight.[5] *See Taylor*, 332 S.W.3d at 492 (noting presumption that jury understood and

---

[5] This portion of the charge stated, "You are instructed that if there is testimony before you in this case regarding [Harris] having committed other acts or participated in other transactions other than the offense alleged against him in the indictment in this case, that you cannot consider such other acts or transactions, if any, unless you first find and believe beyond a reasonable doubt that [Harris] committed such acts or participated in such transactions, if any, but if you do not so believe or if you have a reasonable doubt thereof, you will not consider such testimony for any purpose."

18

followed trial court's jury-charge instructions); *Lane*, 933 S.W.2d at 520 (noting that limiting instruction can minimize impermissible inference of character conformity). Evidence about the extraneous bad act was not confusing or technical in nature and would not tend to mislead the jury. Moreover, the district court could have reasonably determined that the presentation of evidence about the extraneous bad act would not consume an inordinate amount of time and was not merely duplicative or prolonged such that it impacted the "efficiency of the trial proceeding." *Gigliobianco*, 210 S.W.3d at 641. Accordingly, the district court did not abuse its discretion in determining that the probative value of the extraneous bad act evidence outweighed any unfairly prejudicial effect. *See id*. at 641-42; *see also* Tex. Code Crim. Proc. art.37.07, § 3(a)(1).

### 3. Ability to adequately prepare for sentencing

Also within his third issue, Harris contends that because Sifuentez was allowed to testify, he was unable to adequately prepare for sentencing. Specifically, Harris informed the court during punishment that the defense "would call several witnesses to show that this particular offense was no-billed because there was a self-defense claim that was presented and the grand jury found that there was insufficient evidence to hold Christopher Harris over for trial in that particular case." However, the record reflects that the defense was able to present such evidence through other witnesses.

During his cross-examination in the punishment phase of trial, Sifuentez agreed that a grand jury "no-billed" Harris for the extraneous bad act involving Sifuentez, and the prosecutor's next question confirmed for the jury that the case was "no-billed":

19

| | |
|---|---|
| Defense counsel: | Did you learn that this case was no-billed by a Travis County district by a Travis County grand jury? |
| Sifuentez: | What does that mean? |
| Defense counsel: | That they didn't—the grand jury found that there was not sufficient probable cause to hold Christopher Harris over for trial in that case. |
| Sifuentez: | Oh, yeah, yeah. I heard something about that. That's why they let it go. |
| Defense counsel: | Pass the witness. |
| Prosecutor: | Do you know why the grand jury no-billed the case? |
| Sifuentez: | No, ma'am. |

Also during punishment, Zavala testified on redirect for the defense about her understanding of what happened with the Sifuentez incident. Over the State's objection, she stated, "I was told it was self-defense[.]" Further, the State cited article 37.07 in its notice of intention to introduce evidence of the prior assault against Sifuentez and that statute specifically refers to evidence of a defendant's prior criminal record during sentencing. *See* Tex. Code Crim. Proc. art. 37.07, § 3(a)(1); *Garcia*, 2001 Tex. App. LEXIS 808, at *3 (concluding that defendant could have reasonably anticipated that State would call witness to extraneous offense, despite being omitted from State's witness list, because State gave prior notice of its intention to introduce evidence of that extraneous offense).

On this record, Harris has not shown that the district court's ruling allowing Sifuentez to testify was outside the zone of reasonable disagreement. *See Wood*, 18 S.W.3d at 649; *Hightower*, 629 S.W.2d at 925. Accordingly, we overrule Harris's third issue.

**CONCLUSION**

We affirm the district court's judgment of conviction.

_____
Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Goodwin and Triana

Affirmed

Filed:   March 13, 2019

Publish