

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00162-CR

_____

BRIAN WOOLARD, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 158th District Court
Denton County, Texas
Trial Court No. F18-2162-16

---

Before Gabriel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

Appellant Brian Woolard appeals from his conviction of evading arrest. *See* Tex. Penal Code Ann. § 38.04. In three points, he argues that: (1) the evidence is insufficient to support his conviction; (2) the trial court abused its discretion by admitting extraneous-offense evidence; and (3) the trial court abused its discretion because that same evidence was unfairly prejudicial. We will affirm.

## I. BACKGROUND

This case arises out of a May 28, 2018 incident involving the police's attempt to pull over a red Ford F-150 pickup truck. On May 11, seventeen days prior to the incident, Carrollton Police Detective Michael Wall made contact with Woolard to address a warrant for his arrest on an unrelated charge. Woolard was working a remodeling job at 3227 Skylane Drive in Carrollton when Detective Wall contacted him. During their interaction, Woolard stood near a red Ford F-150 pickup truck bearing license plate number GZX-6468. In consideration of Woolard's unfinished work, Detective Wall agreed to allow Woolard to turn himself in to police on May 15. Woolard never turned himself in.

Around 3:30 p.m. on the afternoon of May 28, 2018—the day of the evading-arrest incident—Woolard arrived at the home of Robert and Janae Wall[1] in Ponder driving a red Ford F-150 pickup truck. Woolard came to the home wanting

---

[1]Robert and Janae Wall are unrelated to Detective Michael Wall.

to speak to the Walls' daughter, who shared a child with Woolard. The Walls' daughter was not home, and Robert spoke with Woolard on the front porch and told him to leave "at least a half dozen times." Janae called 9-1-1. While on the phone with dispatch, Janae stated that the license plate of Woolard's red Ford F-150 was "GZK-6468." After speaking with Robert for approximately five minutes, Woolard got into the truck and drove away in the direction of FM 2449. Robert testified that Woolard was unaccompanied when he arrived at the home and that there was nobody inside the truck other than Woolard.

Ponder Police Officer Jeff Sissney was dispatched to the Walls' home around 3:30 in the afternoon on May 28. He was alerted by dispatch that the individual involved was driving a red Ford F-150 pickup truck. Approximately three to four minutes after Officer Sissney received the dispatch, he observed a red Ford F-150 pickup truck stopped at the intersection of FM 2449 and FM 156 in Ponder. Officer Sissney testified that he did not see anyone else in the truck other than the driver. Officer Sissney originally testified that the truck's license plate was "GZK-6468"—the same license plate Janae gave to dispatch—but upon reviewing the incident report, Officer Sissney corrected his testimony to state that the license plate of the truck was "GZX-6468." He began following the truck, which was traveling over the speed limit. Officer Sissney turned on his emergency overhead lights and siren, attempting

to get the driver to pull over. The driver did not pull over.[2] Even as several other police vehicles joined the pursuit, the truck never stopped, and eventually the police ended the pursuit. No witnesses could identify the truck's driver.

On June 4—seven days after the May 28 incident—Carrollton police were called to 3227 Skylane Drive. There they discovered Woolard seated in a red Ford F-150 pickup truck bearing license plate number GZX-6468. After determining that Woolard had an active warrant for his arrest, police ordered him to exit the truck. Woolard refused and was arrested and taken into custody after SWAT responded to the scene.

A jury found Woolard guilty of evading arrest for the May 28 incident and assessed his punishment at two years' confinement. The trial court entered judgment on the jury's verdict, and this appeal ensued.

## II. SUFFICENCY OF THE EVIDENCE

In his first point, Woolard contends that the evidence is insufficient to support his conviction for evading arrest because there was no evidence that he was the driver of the truck that law enforcement attempted to stop and because the evidence affirmatively established that law enforcement did not follow his truck on the day of the incident.

---

[2]Officer Sissney testified he did not think there was "any possible way" that the driver did not know the police were trying to pull the truck over. He described how other vehicles in the area moved to the side of the road in response to the lights and siren.

4

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational finder of fact could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). The trier of fact is the sole judge of the weight and credibility of the evidence; thus, we may not re-evaluate those determinations and substitute our judgment for that of the fact-finder. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the fact-finder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

Although the State did not provide a witness identifying Woolard as the driver who evaded arrest on May 28, the cumulative force of the three instances in which Woolard was seen near or inside the vehicle in question, and his whereabouts that day,

form a sufficient basis for the jury's inference that he was, in fact, the driver. *See Murray*, 457 S.W.3d at 448. The State presented evidence that on May 11 and June 4, Woolard was seen near or inside a red Ford F-150 bearing license plate number GZX-6468—the same license plate of the truck used to evade arrest on May 28. The evidence also reflects that Woolard knew there was a warrant out for his arrest on May 28, and that around 3:30 p.m. on May 28, Woolard was seen leaving the Walls' home in Ponder traveling alone in a red Ford F-150 in the direction of FM 2449. Multiple witnesses testified that the truck driven by Woolard on May 28 appeared to be the same truck he had been seen near or inside on May 11 and June 4. The only discrepancy between these observations was the difference of one letter—"K" instead of "X"—on the license plate of the truck described by Janae during her 9-1-1 call on May 28. The evidence also reflects that around the same time Woolard was seen leaving the Walls' home on May 28, Officer Sissney—who had been dispatched to the Walls' home—observed a red Ford F-150 stopped at the intersection of FM 2449 and FM 156 in Ponder. Officer Sissney testified that the driver of the red Ford F-150 appeared to be alone, and he described how the driver ignored police attempts to stop the truck. Officer Sissney testified that the red Ford F-150 that he attempted to stop bore the license plate number GZX-6468.[3] The cumulative force of this

---

[3]As noted above, Officer Sissney originally testified that the truck's license plate was "GZK-6468," but he corrected his testimony to state that the license plate of the truck that evaded arrest was "GZX-6468."

circumstantial evidence provided the jury with sufficient basis to reasonably infer that Woolard was, in fact, the driver of the truck and thus evaded arrest on May 28. *See Villa*, 514 S.W.3d at 232; *see also Murray*, 457 S.W.3d at 448. Accordingly, we overrule Woolard's first point.

### III. EXTRANEOUS-OFFENSE EVIDENCE

In his second and third points, Woolard argues that the trial court abused its discretion by admitting evidence of his June 4, 2018 arrest in violation of Texas Rules of Evidence 403 and 404(b). *See* Tex. R. Evid. 403, 404(b). Specifically, Woolard contends that evidence regarding his June 4, 2018 arrest was impermissible extraneous-offense evidence. The complained-of evidence of Woolard's June 4, 2018 arrest consists of the following: (1) a video from Carrollton Police Officer Brian Ryter's body camera;[4] (2) four photos of Woolard's truck in the parking lot of 3227 Skylane Drive; (3) one photo of Woolard being arrested in the presence of six

---

[4]As to the video, we note that Woolard incorrectly complains that the State "showed a thirteen-minute video portraying the standoff between Appellant and the SWAT team on June 4, 2018." The record reflects that while the State *proposed* showing two portions of body camera footage from June 4, 2018, from the beginning of the video to 3:12 and then from 21:36 to 31:50, the trial court only *allowed* the State to play the first portion and limited the second portion to 21:36 to 22:28, that is, three minutes and twelve seconds for the first portion and fifty-two seconds for the second portion, for a total of four minutes and four seconds. The portions shown to the jury depict Officer Ryter approaching a red Ford F-150 bearing license plate GZX-6468, depict Woolard in the driver's seat of the Ford F-150, depict Woolard giving his name and date of birth to Officer Ryter, and depict Officer Ryter telling Woolard that there is a confirmed warrant for his arrest and that he is under arrest. The portions of the video depicting the standoff between Woolard and the SWAT team were not shown to the jury.

police officers; (4) testimony from Edward Yang—the owner of the business at 3227 Skylane Drive—that after Woolard refused to leave the parking lot, Yang called the police, and the police stayed on the scene "for at least four to five hours"; and (5) testimony from Officer Ryter that a "whole lot of police officers" and a SWAT team came out to the scene and ultimately arrested Woolard.

## A. THE LAW

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Prible*, 175 S.W.3d at 731 (quoting *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)); *Montgomery v. State*, 810 S.W.3d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g). "[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed" regardless of the reason for the trial court's ruling. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b). Such extraneous evidence may be admissible, however, "when it has relevance apart from character conformity." *Devoe*, 354 S.W.3d at 469 (citing *Moses v. State*, 105 S.W.3d 622,

8

626 (Tex. Crim. App. 2003)); *see* Tex. R. Evid. 404(b). Even if evidence is admissible under Rule 404(b), it may be excluded under Rule 403. *Mozon v. State*, 991 S.W.2d 841, 846 (Tex. Crim. App. 1999). Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needless presentation of cumulative evidence. Tex. R. Evid. 403.

## B. ANALYSIS OF THE EVIDENCE RELATING TO IDENTIFICATION–OFFICER RYTER'S BODY CAMERA VIDEO AND THE PHOTOS OF WOOLARD'S TRUCK

The evidence pertaining to Woolard's June 4, 2018 arrest can be divided into two broad categories: (1) evidence that identified Woolard as the driver of the red Ford-150—consisting of Officer Ryter's body camera video and the four photos of Woolard's truck; and (2) evidence relating to SWAT's involvement—consisting of the photo of Woolard being arrested in the presence of six police officers and the above-mentioned testimonies of Yang and Officer Ryter. We begin our analysis by addressing the evidence that identified Woolard as the driver of the red Ford-150.

As to Rule 404(b), the trial court admitted that evidence under the exception to Rule 404(b) that allows the admission of extraneous evidence to show, among other things, identity, intent, knowledge, motive, or absence of mistake.[5] *See* Tex. R. Evid.

---

[5]Woolard also contends that because the events on June 4 occurred after the events on May 28, his June 4 actions were unrelated to the charged offense. But an extraneous offense is not per se inadmissible merely because it occurred after the charged offense. *See Williams v. State*, 290 S.W.3d 407, 411 (Tex. App.—Amarillo 2009, no pet.) (mem. op.) (upholding admission of subsequent, extraneous robbery to

9

404(b)(2). An extraneous offense may be admissible to show identity when identity is an issue in the case. *Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006) (citing *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996)); *see also Price v. State*, 351 S.W.3d 148, 151 (Tex. App.—Fort Worth 2011, pet. ref'd). The charged crime and the extraneous offense must share such similar characteristics or patterns as to constitute a "signature." *Segundo v. State*, 270 S.W.3d 79, 88 (Tex. Crim. App. 2008). There are no "rigid rules" regarding what similarities may suffice; "common characteristics may be proximity in time and place, mode of commission of the crimes . . . or any other elements which mark both crimes as having been committed by the same person." *Id.* But "generic" similarities cannot be said to bear the same "signature." *Id.* In other words, if the similarities between the two offenses are simply typical of that type of offense, they are not illustrative of the defendant's distinctive manner of committing crimes. *Id.*; *see Page*, 213 S.W.3d at 336.

Here, Woolard's main trial strategy, reiterated in his brief before this court, was that he was not the driver of the red Ford F-150 that was used to evade arrest on May 28. As the State points out, the fact that the license plate of the truck that was used to evade arrest on May 28 matches the license plate of the truck within which Woolard was sitting during the events on June 4 is highly relevant to proving that

connect the vehicle from the robbery with the vehicle from the charged offense); *Russell v. State*, 113 S.W.3d 530, 537 (Tex. App.—Fort Worth 2003, pet. ref'd) (upholding trial court's admission of extraneous offense occurring five weeks after the charged offense).

Woolard was the driver of the truck used to evade arrest on May 28. While no witnesses could identify the driver on May 28, the Walls saw Woolard driving away from their home towards FM 2449 that day in a red Ford F-150 bearing a license plate number that Janae Wall reported as "GZK-6468." Then Officer Sissney, minutes after responding to Janae's 9-1-1 call, located and attempted to stop a red Ford F-150 pickup truck bearing the license number GZX-6468 that was traveling on FM 2449. Finally, Woolard was in a red Ford F-150 pickup truck bearing license plate number GZX-6468 on June 4, when he was arrested pursuant to his warrant.

We have previously affirmed the admission of extraneous-offense evidence when that evidence involved the repeated use of a vehicle to commit similar offenses. *See Karnes v. State*, 127 S.W.3d 184, 191 (Tex. App.—Fort Worth 2003, pet. ref'd) (admitting evidence of a white Ford truck used in a similar robbery that occurred ten minutes before, and less than a mile away from, the charged robbery); *see also Pena v. State*, 867 S.W.2d 97, 99 (Tex. App.—Corpus Christi 1993, pet. ref'd) (stating that the repeated use of the same vehicle in similar offenses may constitute a signature). In this case, there is evidence that Woolard had knowledge of an outstanding arrest warrant when he evaded police on May 28 and that he was traveling in a red Ford-150 truck bearing license plate number GZX-6468 when he evaded police. There is also evidence that on June 4, Woolard had knowledge of an outstanding arrest warrant and refused police commands to exit a red Ford-150 truck bearing license plate number GZX-6468. We hold that these instances share such similar characteristics that the

11

trial court's decision to admit Officer Ryter's body camera video and the photos of Woolard's truck to show identity was not an abuse of discretion. *See Segundo*, 270 S.W.3d at 88; *Page*, 213 S.W.3d at 336.[6]

As to Rule 403, we presume the probative value of evidence substantially outweighs the danger of unfair prejudice; the burden of rebutting this presumption is on the opponent of the evidence. *Montgomery*, 810 S.W.2d at 389; *see Wenger v. State*, 292 S.W.3d 191, 204 (Tex. App.—Fort Worth 2009, no pet.). When undertaking a Rule 403 analysis, a trial court:

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Woolard asserts that the prejudicial effect of the June 4 evidence substantially outweighed its probative value and therefore should have been excluded. But with respect to Officer Ryter's body camera video and the photos of Woolard's truck,

---

[6]Because we have determined that this evidence was properly admitted to show identity, we need not address Woolard's remaining arguments as to the admission of this evidence under Rule 404(b). *See* Tex. R. App. P. 47.1; *Devoe*, 354 S.W.3d at 469.

applying the balancing test laid out in *Gigliobianco*, the trial court could have reasonably determined that the first two factors—the probative value of the evidence and the prosecution's need for it—weighed in favor of admission. The evidence undoubtedly carried probative value because it placed Woolard within the vehicle used to evade arrest. *See Gigliobianco*, 210 S.W.3d at 641 ("'[P]robative value' refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence.") And because no witness identified the driver on May 28, the State had no choice but to rely on circumstantial evidence—such as Woolard's presence in the same truck on June 4—to connect Woolard to the charge. *See Jones v. State*, 119 S.W.3d 412, 423 (Tex. App.—Fort Worth 2003, no pet.) ("[T]he State needed the [extraneous] evidence because [the defendant] argued that the charged offense never occurred.").

Balancing the remaining factors against these, the trial court could have reasonably determined that the overall test weighed in favor of admission. The trial court only allowed four minutes and four seconds of video to be played, and the four photos simply showed Woolard's truck in a parking lot. None of this evidence was technical or confusing in a way that would mislead the jury or cause it to give the evidence undue weight. *Cf. Gigliobianco*, 210 S.W.3d at 641 (noting that scientific evidence is of the type that "might mislead a jury that is not properly equipped to judge the probative force of the evidence"); *Harris v. State*, 572 S.W.3d 325, 334 (Tex.

13

App.—Austin 2019, no pet.). The evidence simply showed that Woolard was physically present in a red Ford F-150 bearing the same license plate number as the red Ford F-150 that was used to evade arrest on May 28 and that Woolard refused the police's orders to exit the truck.[7] Moreover, the trial court gave a limiting instruction that minimized the risk that the jury would consider this evidence for an improper purpose or give this evidence undue weight.[8] *See Lane*, 933 S.W.2d at 520 (noting that limiting instructions can minimize impermissible inferences of character conformity); *Harris*, 572 S.W.3d at 334 ("The district court's limiting instruction in the charge about Zavala's testimony minimized any risk that the jury would consider the substance of her questioning for any improper purpose or give it undue weight."); *see also Adams v. State*, 179 S.W.3d 161, 165 (Tex. App.—Amarillo 2005, no pet.) ("[W]e generally presume that the jury follows the trial court's instructions, including a limiting instruction regarding certain testimony.").

---

[7]Woolard contends that the jury was confused because on three occasions during the State's opening statement, the prosecutor inaccurately stated that the evading-arrest incident occurred on June 4. The prosecutor later corrected these misstatements by noting that June 4 was "about a week or so after the pursuit" and provided the jury with a detailed and accurate timeline throughout the rest of the trial. Any confusion was further minimized by Woolard's counsel, who took care in opening statement and in cross examination of witnesses to clearly distinguish for the jury the relevance (or lack thereof) of the events that occurred on May 28 and June 4.

[8]The limiting instruction stated: "[Y]ou are instructed that you shall not consider this evidence for the purpose of proving conforming conduct. You are instructed to limit your consideration of this evidence to the proper purpose for which it was admitted, that being to show [Woolard's] motive, intent, identity, knowledge or absence of mistake."

After applying the requisite Rule 403 balancing test, we hold that the trial court did not abuse its discretion by admitting Officer Ryter's body camera video and the four photos of Woolard's truck. *See Gigliobianco*, 210 S.W.3d at 641–42. Accordingly, we overrule the portions of Woolard's second and third points concerning this evidence.

## C. ANALYSIS OF THE EVIDENCE RELATING TO SWAT'S INVOLVEMENT–YANG'S TESTIMONY, OFFICER RYTER'S TESTIMONY, AND WOOLARD'S ARREST PHOTO

We now turn our attention to the evidence of SWAT's involvement. That evidence consisted of: (1) Yang's testimony that police stayed on the scene "for at least four to five hours"; (2) Officer Ryter's testimony that a "whole lot of police officers" and a SWAT team came out to the scene and ultimately arrested Woolard; and (3) a photo of Woolard being arrested in the presence of six police officers.

Assuming, without deciding, that the trial court erred by admitting this evidence, we may not reverse the trial court's judgment unless the error affected Woolard's substantial rights. *See* Tex. R. App. P. 44.2(b). The erroneous admission of evidence is non-constitutional error. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Kennedy v. State*, 193 S.W.3d 645, 660 (Tex. App.—Fort Worth 2006, pet. ref'd). Non-constitutional error requires reversal only if it affects an appellant's substantial rights. *Gonzalez*, 544 S.W.3d at 373 (citing Tex. R. App. P. 44.2(b)); *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (citing same). Substantial rights are not affected if the reviewing court has fair assurances that the

15

erroneous exclusion of evidence had no influence or only a slight influence on the jury. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Motilla*, 78 S.W.3d at 355. "Put another way, to be reversible, the jury must have been 'substantially swayed' by the improperly-admitted evidence." *Gillon v. State*, No. 02-16-00148-CR, 2017 WL 1738039, at *3 (Tex. App.—Fort Worth May 4, 2017, pet. ref'd) (mem. op., not designated for publication) (quoting *Hinds v. State*, 970 S.W.2d 33, 35 (Tex. App.—Dallas 1998, no pet.)). In making this determination, we review the entire record, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla*, 78 S.W.3d at 355. We may also consider the jury instructions, the State's theory and defensive theories, whether the State emphasized the error, closing arguments, and voir dire. *Id.* at 355–56.

Based on our review of the record, there is overwhelming evidence supporting the jury's verdict. *See Motilla*, 78 S.W.3d at 357; *Gillon*, 2017 WL 1738039, at *4. As detailed above, around 3:30 in the afternoon on May 28, Woolard was seen in Ponder driving a red Ford F-150 in the direction of FM 2449. Janae Wall reported to dispatch that the license plate number of Woolard's truck was "GZK-6468." Around that same time, Officer Sissney observed a red Ford F-150 stopped at the intersection of FM 2449 and FM 156 in Ponder. Officer Sissney testified that he turned on his emergency overhead lights and siren, but the driver of the Ford F-150 ignored police attempts to stop the truck. Officer Sissney further testified that the truck he

16

attempted to stop bore the license plate number GZX-6468—the same license plate number of the truck reported by Janae to dispatch, with the only exception being the difference of a "K" instead of an "X." And while Janae told the dispatcher that Woolard was driving a red Ford F-150 bearing license plate number "GZK-6468," the State presented evidence that on May 11 and June 4, Woolard was seen near or inside a red Ford F-150 bearing license plate number GZX-6468.

In contrast to the overwhelming evidence supporting the jury's verdict, the evidence concerning SWAT's involvement was slight and not emphasized by the State. The complained-of evidence concerning SWAT's involvement was brief: Yang's testimony that police stayed on the scene "for at least four to five hours," Officer Ryter's testimony that "a whole lot of police officers" and a SWAT team arrived on the scene to arrest Woolard, and one photo showing Woolard's arrest surrounded by six police officers. Neither the State's theories nor Woolard's theories had anything to do with SWAT's involvement. The State neither mentioned SWAT's involvement to venire members during voir dire nor mentioned SWAT's involvement during its closing argument during the guilt/innocence stage of Woolard's trial. Moreover, as discussed above, the trial court gave a limiting instruction that minimized the risk that the jury would consider evidence of Woolard's June 4 arrest for an improper purpose or give it undue weight.

On this record, we cannot say that the jury must have been "substantially swayed" by the evidence concerning SWAT's involvement. Assuming the jury

considered evidence of SWAT's involvement at all, we are persuaded that its admission had, at most, only a slight influence—not enough to constitute reversible error. *See Motilla*, 78 S.W.3d at 255. We thus hold that Woolard's substantial rights were not violated and hold that any error was harmless. *See* Tex. R. App. P. 44.2(b); *Motilla*, 78 S.W.3d at 355. Accordingly, we overrule the portions of Woolard's second and third points concerning SWAT's involvement in his June 4 arrest.

## IV. CONCLUSION

Having overruled Woolard's three points, we affirm the trial court's judgment.

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 26, 2020