# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10928

United States Court of Appeals
Fifth Circuit

**FILED**
July 29, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

CORY DALE FIELDS,

> Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Cory Dale Fields pleaded guilty to possessing a firearm as a felon. The district court imposed an upward variance at sentencing, relying in part on the presentence report's description of two instances where Fields was arrested and charged with offenses involving injury to a child. In both cases, as the PSR noted, the charges were ultimately no-billed by Texas grand juries. Fields argues that in light of the no-bills, the PSR's description of the conduct underpinning his prior arrests was insufficiently reliable for the district court to take the arrests into account at sentencing. We disagree, and therefore affirm.

No. 18-10928

## I

The presentence report described an extensive criminal history, beginning when Fields was eighteen and continuing for twenty years. Several of the convictions involved lying to or attempting to evade law enforcement. The PSR also listed several instances of "other criminal conduct." As relevant here, it included that Fields was arrested in 2001 and charged with "Injury to a Child/Elderly/Disabled Person with Intent of Bodily Injury" based on a domestic violence incident. Describing the police offense report, the PSR stated that officers were called to Fields's residence, where Fields's then-girlfriend and her son told them that after Fields found the child eating candy while in time-out, he "pushed him by the shoulders and kicked him in the buttocks, causing him to fall against a wall [and] causing him pain." It also included information on another arrest in 2005, which resulted in Fields's being charged with "Injury to a Child/Elderly/Disabled—Bodily Injury." The offense report for the 2005 arrest stated that officers were once again called to Fields's residence, where Fields's girlfriend told them that Fields had yelled at her two children for arguing, one of the children stood up for his brother, and Fields pushed him "into a wall and onto the tile floor," causing the child to scrape his back and hit his head on the wall. In both cases, a Texas grand jury ultimately no-billed the charge.

The PSR calculated a total offense level of 17 with a criminal history category of IV, yielding a Guidelines range of 37 to 46 months' imprisonment. It also suggested that Fields's past criminal history might warrant an upward departure or a variance. The district court notified Fields before sentencing that it was considering a sentence above the Guidelines range.

At sentencing, defense counsel argued that a sentence above the Guidelines range was not warranted because Fields's past convictions either directly factored into his level IV criminal history categorization; were

2

No. 18-10928

connected to offenses that factored into that categorization; or occurred sufficiently long ago that they should not be considered at all. Counsel further argued that there was "no violent history at all," pointing out that while the PSR noted certain arrests—including the 2001 and 2005 arrests for injury to a child—that may have involved violent conduct, all charges resulting from those arrests were no-billed by grand juries. It suggested that "in light of that [no-bill] finding[, there was not] enough reliable information to conclude that [the alleged conduct] occurred."

The district court described Fields's criminal history as "very disturbing," though it acknowledged that "many of them are minor offenses." It explained that many of Fields's past convictions were not factored into his criminal history category, and more recent offenses reflected a troubling pattern of drug offenses and failure to cooperate with law enforcement. Then, it turned to conduct for which Fields had not been convicted—specifically, the 2001 and 2005 arrests involving injury to children. It stated:

> The criminal record goes on for several pages in the Presentence Report after that, and for one reason or another you weren't convicted of any of those offenses, but I can tell from the descriptions of the conduct you had engaged in that in some of those instances . . . . in fact, you did . . . commit the offense that you were charged with.
>
> For example, in . . . paragraph 46, that goes back to when you were 22 years of age, and the offense that you were charged with was abusive conduct toward a child. I don't know . . . all of the circumstances, but I do find from a preponderance of the evidence that you engaged in the conduct that's described in the narrative part in paragraph 46.
>
> Similarly, in paragraph 47, you were charged with injury to a child or elderly person or disabled person, and I can tell—that was no billed by a grand jury, but I can tell from the description of the offense

report in paragraph 47 that you engaged in the
conduct described there . . . .

Based on Fields's history and characteristics, the need to promote respect for the law, and the nature of the sentencing offense, the court concluded that a sentence above the top of the Guidelines range of 46 months was warranted under 18 U.S.C. § 3553(a). It sentenced Fields to 60 months' imprisonment, supervised release of 3 years, and a special assessment of $100. Defense counsel objected to the sentence as procedurally and substantively unreasonable for the reasons argued throughout the sentencing hearing.

Fields now appeals. He solely argues that the PSR's description of the conduct underlying the 2001 and 2005 no-billed arrests was insufficiently reliable for the district court to account for those arrests at sentencing.

## II

A district court may impose a sentence outside of the Guidelines range if, after considering the factors identified in 18 U.S.C. § 3553(a) and making an "individualized assessment based on the facts presented," the court determines that an outside-Guidelines sentence is warranted.[1] It is "well-established that prior criminal conduct not resulting in a conviction may be considered by the sentencing judge,"[2] as long as the sentencing court finds by a preponderance that the conduct occurred.[3] Where, as here, a defendant objects to the sentence's procedural reasonableness at sentencing, this court reviews claims of procedural error de novo and the district court's factual findings for clear error.[4]

---

[1] *See Gall v. United States*, 552 U.S. 38, 49–51 (2007).

[2] *See United States v. Fuentes*, 775 F.3d 213, 219 (5th Cir. 2014) (per curiam) (quoting *United States v. Lopez-Velasquez*, 526 F.3d 804, 807 (5th Cir. 2008) (per curiam)).

[3] *See United States v. Harris*, 702 F.3d 226, 230 (5th Cir. 2012) (per curiam).

[4] *See id.* at 229.

No. 18-10928

"[D]istrict courts may consider any information which bears sufficient indicia of reliability to support its probable accuracy."[5] The requirement that the information bear sufficient indicia of reliability means that a sentencing court may not rely on a defendant's "bare arrest record."[6] It also means that even when a PSR provides a more detailed factual recitation of the conduct underlying an arrest, if that recitation lacks sufficient indicia of reliability then "it is error for the district court to consider it at sentencing—regardless of whether the defendant objects or offers rebuttal evidence."[7] If the factual recitation possesses sufficient indicia of reliability, conversely, the sentencing court may consider it unless the defendant objects and offers "rebuttal evidence challenging the truthfulness, accuracy, or reliability of the evidence supporting the factual recitation in the PSR."[8] While "[m]ere objections . . . are generally insufficient," an objection "may sufficiently alert the district court to questions regarding the reliability of the evidentiary basis for the facts contained in the PSR."[9]

## III

The sentencing court here did not rely on a bare arrest record. Instead, it looked to the PSR's description of two detailed offense reports explaining when, where, and how Fields allegedly engaged in abusive conduct toward his girlfriend's children, and found by a preponderance that he engaged in the conduct described. Our caselaw makes clear that generally, a sentencing court "may properly find sufficient reliability on a presentence investigation report which is based on the results of a police investigation," especially where the

---

[5] *Id.* at 230 (internal quotation marks omitted).

[6] *See id.* at 229–30; *Fuentes*, 775 F.3d at 219.

[7] *Harris*, 702 F.3d at 231.

[8] *Id.*

[9] *Id.* at 230 & n.3.

offense report is detailed and includes information gathered from interviews with the victim and any other witnesses.[10]

Fields argues that the PSR's factual recitations of the conduct underpinning his 2001 and 2005 arrests nonetheless lacked sufficient indicia of reliability because grand juries no-billed the charges resulting from those arrests. We disagree.

## A

It is settled that a sentencing court may rely on the PSR's factual recitation of the conduct underlying an arrest even where the defendant was ultimately acquitted of all charges stemming from that arrest.[11] The Supreme Court has explained that because a criminal conviction requires proof beyond a reasonable doubt, "acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt."[12] Further, "it is impossible to know exactly why a jury found a defendant not guilty on a certain charge," since an acquittal "can only be an acknowledgment that the government failed to prove an essential element of the offense beyond a reasonable doubt."[13] Taken together, these principles yield the conclusions that "the jury cannot be said to have 'necessarily rejected' any facts when it returns a general verdict of not guilty," and "a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence."[14]

---

[10] *See Fuentes*, 775 F.3d at 220 (quoting *United States v. Vela*, 927 F.2d 197, 201 (5th Cir. 1991)).

[11] *See, e.g.*, *United States v. Oti*, 872 F.3d 678, 700 n.18 (5th Cir. 2017); *United States v. Melancon*, 662 F.3d 708, 713–14 (5th Cir. 2011).

[12] *United States v. Watts*, 519 U.S. 148, 155 (1997) (per curiam) (quoting *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 361 (1984)).

[13] *Id.*

[14] *Id.* at 155–56.

No. 18-10928

Fields argues that a no-bill is different from an acquittal because it involves a lower standard of proof. The crux of his argument is that the grand jury no-bills "provided reason to doubt the reliability of the allegations" because "a grand jury's return of a no-bill . . . serves as strong evidence that it found the evidence failed to even satisfy the probable cause standard, much less the far higher standard of preponderance of the evidence." In effect, he argues, it makes sense that an acquittal would not preclude a district court from finding that the conduct underlying the acquitted charge had occurred— because the "beyond a reasonable doubt" standard for a conviction is higher than the "preponderance" standard for factfinding at sentencing. But where the jury was faced with a *lower* standard of proof than preponderance of the evidence, Fields argues, its decision to no-bill should preclude later finding by a preponderance that the conduct occurred.

## B

This requires us to determine what exactly a Texas grand jury's no-bill establishes. Does a no-bill, as Fields argues, represent the grand jury's conclusion that there was no probable cause to find at least some of the facts underlying the charge? Or does it, as the government argues, signify only that the specific evidence before the grand jury did not convince it to formally charge the defendant with a specific offense? Texas law suggests the latter.

While we have not yet addressed this issue in a precedential opinion, a panel of our court discussed it at length in an unpublished decision in *United States v. Gipson*.[15] As here, after the defendant in *Gipson* pleaded guilty to being a felon in possession of a firearm, the district court imposed an above-Guidelines sentence— referencing three prior offenses for which Gipson was charged but not convicted, including an aggravated kidnapping charge that a

---

[15] 746 F. App'x 364 (5th Cir. 2018) (per curiam).

Texas grand jury had no-billed.[16] The PSR described witness testimony placing Gipson at the scene of the kidnapping and accurately identifying his tattoos, though it also noted the same witness's failure to identify Gipson in a photo lineup.[17] Over defense counsel's objection, and despite the grand jury no-bill, the district court concluded that it could "tell from a preponderance of the evidence that [Gipson] committed a significant part of the activities that he was charged with then."[18]

We rejected Gipson's argument that the grand jury no-bill stripped the PSR of sufficient indicia of reliability,[19] relying on a decision from the en banc Texas Court of Criminal Appeals, *Rachal v. State*, which addressed whether a trial court erred in admitting evidence during a capital punishment trial that the defendant had previously been arrested and subsequently no-billed for a fatal shooting.[20] While the defendant in *Rachal* did not dispute that he had committed the extraneous homicide, he argued that the no-bill indicated that the grand jury found the homicide to be "justifiable and lawful" and committed in self-defense.[21] The CCA held that the defendant had overstated the no-bill's significance. "The [grand jury]'s no-bill of the [extraneous] homicide [did] not mean it was justified, lawful, or in self-defense," since the grand jury was "without authority to make such findings; its authority and duty is limited to inquiring into criminal accusations and determining whether evidence exists to formally charge a person with an offense."[22] Because a no-bill "is merely a finding that the specific evidence brought before the particular [grand jury] did

---

[16] *Id.* at 365.
[17] *Id.* at 366.
[18] *Id.* at 365.
[19] *See id.* at 366.
[20] *Rachal v. State*, 917 S.W.2d 799, 806–07 (Tex. Crim. App. 1996) (en banc).
[21] *See id.* at 807.
[22] *Id.* (citing Tex. Code Crim. P. arts. 20.09, 20.19, and 21.01).

not convince them to formally charge the accused with the offense alleged," the CCA concluded that evidence of the extraneous homicide could still be introduced at the punishment phase as long as it met the relevant evidentiary standard of being proven beyond a reasonable doubt, relevant, and more probative than prejudicial.[23] Texas courts have repeatedly followed *Rachal* in cases involving the admission of extraneous offenses as "bad acts" evidence in non-capital cases,[24] which Texas evidence law also requires to be capable of being proven beyond a reasonable doubt.[25]

Reasoning from *Rachal, Gipson* held that "[a] grand jury's no-bill is a decision not to charge the accused with a *particular offense*, not a judgment that *no unlawful conduct* whatsoever occurred."[26] As a result, the grand jury could have rejected the *charge* of "aggravated kidnapping" without rejecting the prosecution's factual claims—and, consistent with this, the sentencing court could coherently conclude by a preponderance that Gipson "committed *a significant part of the activities* that he was charged with then."[27]

Acknowledging *Gipson*, Fields urges us to reject it as nonbinding and to instead conclude that a no-bill bears more expansive significance. Ultimately, however, Fields gives us no reason to doubt *Rachal*'s characterization of a no-bill as nothing more than the decision by a particular grand jury that the

---

[23] *Id.* & n.4. The opinion clarifies that "clearly proven," under Texas law, means "beyond a reasonable doubt." *Id.* n.4.

[24] *See Harris v. State*, 572 S.W.3d 325, 335–36 (Tex. App.—Austin 2019) (affirming the trial court's decision to exclude evidence that a grand jury had no-billed an assault charge, while allowing admission of evidence of the assault to challenge testimony that the defendant was a peaceful, non-confrontational person); *Bass v. State*, Nos. 14-05-00865-CR, 14-05-00866-CR, 2009 WL 3839003, at *4 (Tex. App.—Houston [14th Dist.] June 18, 2009) (affirming exclusion of evidence of a grand jury no-bill).

[25] *See Harrell v. State*, 884 S.W.2d 154, 161 (Tex. Crim. App. 1994) (en banc) (holding that for evidence of extraneous offenses to be admitted, the court must determine that a jury could find beyond a reasonable doubt that the defendant committed the offenses).

[26] *Gipson*, 746 F. App'x at 366.

[27] *Id.* (emphasis added).

specific evidence before it did not convince it to charge the defendant with an offense. He points to the fact that the Texas Code of Criminal Procedure authorizes a grand jury to "inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible person."[28] He also cites a Texas intermediate appellate case for the suggestion that because a grand jury returns a *true bill* when it "determines that there is probable cause to believe that the accused committed the offense,"[29] a no-bill at least provides affirmative evidence that there was no probable cause to believe that *any* offense occurred.[30] But these arguments reveal the logical leap that we would have to undergo to conclude that a no-bill on a given charge renders unreliable an otherwise sufficient factual description of events underpinning that charge. While the grand jury *might* return a no-bill because it found no probable cause to conclude that the events occurred as described, it also might return a no-bill as a function of the evidence and argument presented by the prosecution, or based on its conclusion that the facts were a poor fit for the particular offense charged.[31] By itself, the no-bill cannot transform a factual recitation with sufficient indicia of reliability into one that lacks such indicia.[32]

---

[28] Tex. Code Crim. P. art. 20.09. Fields argues that it "strains credulity to presume that a district court had more information before it than the grand jury charged with 'inquiring into all offenses' of which it had knowledge."

[29] *Harris Cty. Dist. Atty's Office v. R.R.R.*, 928 S.W.2d 260, 264 (Tex. App.—Houston [14th Dist.] 1996).

[30] *See id.* (observing that "[t]he initial grand jury's refusal to indict strongly suggests that probable cause was missing when the contradictory evidence was presented," but also relying on the prosecutor's decision not to request an indictment a third time).

[31] Indeed, Fields's argument that the grand juries could have found that he was entitled to a "reasonable discipline" defense helps prove the point. If the grand juries potentially no-billed the offenses because they concluded Fields had defenses to both, as Fields argues, then the no-bills did not necessarily reject any of the underlying facts described in the incident reports.

[32] We note that *Gipson* drew a dissent. While the dissent implicitly reached a different conclusion about the meaning of a Texas grand jury's no-bill, it also focused on the fact that

No. 18-10928

## C

One point of clarification is necessary. *Gipson* emphasized that the district court did not find that the defendant had committed the *offense* of aggravated kidnapping, but rather found by a preponderance that he had committed "a significant part of the activities" with which he was charged.[33] Here too, although the district court initially stated that it could "tell from the descriptions of the conduct [Field] had engaged in that in some of those instances . . . [he did] commit the offense that [he] was charged with," it then went on to find by a preponderance that Fields "engaged in the conduct" described in the PSR in relation to the 2001 and 2005 arrests. This case therefore does not require us to address whether a grand jury no-bill precludes a sentencing court's ability to find by a preponderance that the defendant committed the particular no-billed offense, and neither party asks us to do so. The district court relied on sufficiently reliable evidence to find that Fields had committed the underlying activities and based the upward variance in part upon those activities. We can end our inquiry there.[34]

## IV

We affirm the sentence.

---

in *Gipson*, the PSR included the fact that the key witness had failed to identify *Gipson* in a photo lineup—which may have explained why the grand jury no-billed the aggravated kidnapping offense. *See Gipson*, 746 F. App'x at 367–70 (Higginson, J., dissenting). As no similar exculpatory information was present in the PSR's description of the conduct underpinning Fields's 2001 and 2005 arrests, we do not consider whether such information should undercut otherwise sufficient indicia of reliability.

[33] *Id.* at 366–67 (majority op.).

[34] Fields does not contend that if the district court properly relied on the PSR's factual recitations of the conduct underpinning his 2001 and 2005 arrests, it otherwise erred in imposing an upward variance.