# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 23-30053

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
January 12, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Taylor Chiasson,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CR-267-1

———————————————————————

Before Richman, *Chief Judge*, and Haynes and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Taylor Chiasson appeals an above-guidelines sentence the district court imposed based on Chiasson's extensive criminal history. He argues the court erred by considering testimony by two non-victim witnesses and by relying on "bare arrests" in Chiasson's record. We AFFIRM.

I.

In March 2021, Chiasson was arrested and charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Though

Chiasson's explanation about how he came to possess the gun changed multiple times, he eventually claimed the gun belonged to an acquaintance. While in pretrial custody, "in an effort to have the case dismissed," Chiasson unsuccessfully attempted to convince this acquaintance to sign an affidavit stating the gun was hers. Chiasson ultimately pled guilty to violating § 922(g)(1).

Chiasson's Presentence Report ("PSR") listed his numerous prior criminal convictions and arrests. Although only 33 years old, Chiasson had 14 prior adult convictions. All but three convictions listed in the PSR contained descriptions of Chiasson's conduct leading up to the arrest. The PSR also noted 19 arrests spanning from 2008 to 2020 that either had no recorded disposition or had been dismissed. The PSR described the circumstances for eight of the 19 arrests.

At the sentencing hearing on January 12, 2023, the district court confirmed there were no outstanding objections to the PSR or its guidelines calculation. The guidelines range was 57 to 71 months imprisonment based on an offense level of 19 and a criminal history category of V. No party objected to the PSR's conclusion that "there [were] no identifiable victims in this offense." Before Chiasson's counsel presented argument for a downward variance, the court stated, "from my review of his criminal history, it doesn't look like the State did much at all for 20 something years to this gentleman."

Chiasson's counsel urged a downward variance to 30 months imprisonment. She recounted Chiasson's abuse as a child, his father's recent diagnosis of Parkinson's disease, and the effects Hurricanes Laura and Delta had on Chiasson. The present firearm incident, counsel argued, was an outlier in Chiasson's otherwise positive trajectory as he "pick[ed] up the pieces of his life." Chiasson also addressed the court, explaining how he came

into possession of the gun. He acknowledged he should have called the police rather than take the gun. He also explained that the onset of his father's illness refocused his life and motivated him to stay out of trouble.

To rebut this narrative, the government offered testimony by two of Chiasson's neighbors. Defense counsel objected under Federal Rule of Criminal Procedure 32, which, she argued, prohibits sentencing testimony by "anyone from the public . . . if they're not identified as a victim." The district court overruled that objection. The court observed it was "allowed to consider the past criminal history of the Defendant," and the witnesses' testimony "just expound[ed] on that criminal history," similar to letters received "from third parties about different defendants that [the court] review[s] for purposes of sentencing."

The first government witness, Toby Osborne, lived across the street from Chiasson. Osborne recounted how Chiasson's presence turned a once close-knit family neighborhood into a volatile scene. Osborne described almost 30 police visits to Chiasson's house between 2015 and 2020. He suspected Chiasson conducted drug activity out of his house because people came by at all hours of day and night, including one instance when Osborne saw police "removing multiple illegal marijuana plants from the home." Osborne recounted one occasion where his children witnessed Chiasson kicking out his own front door in the middle of the night while ignoring officers' commands—with weapons drawn—to exit the house. Chiasson also violated numerous ordinances concerning clean up after Hurricane Laura, including one occasion where city inspectors found a dog's rotting carcass in debris stacked in Chiasson's driveway. Chiasson's presence created so much anxiety that Osborne felt compelled to borrow a gun for protection. Osborne also discussed an arrest record he found on Google to show Chiasson had escaped the consequences of his actions.

The second witness, David Benada, was a sheriff's deputy who lived in Chiasson's neighborhood. Benada also testified to the chaotic nature of their street after Chiasson moved in, including increased police activity. Since Chiasson's arrest, however, Benada described how quiet the street had become. Benada also spoke to Chiasson's many arrests, including those for "homicide, principal to homicide, to numerous drug charges to carnal knowledge charges to numerous weapons charges." The court told Benada it already had that arrest information. After the government's witnesses testified, it asked for an above-guidelines sentence to reflect the seriousness of the offense and to promote respect for the law.

The district court varied upward by 25 months, sentencing Chiasson to 96 months imprisonment. The court explained that the guidelines did "not capture the extent of [Chiasson's] past criminal history." It noted that the PSR provided "a very detailed analysis of" Chiasson's criminal record. His many light sentences, the court found, had no deterrent effect: "[T]his is based upon his extensive criminal history and certainly is based on his extensive criminal history not being a deterrent which is a factor within the 3553(a) factors." Chiasson had "been arrested time and time and time again. He's been arrested for possession of a firearm by a felon time and time again. He's been arrested for drug offenses. He's been arrested for battery, carnal knowledge of a juvenile. It goes on and on and on." Most of his arrests and convictions resulted in dismissals or suspended sentences. Finding Chiasson a danger to society and undeterred by prior sentences, the court believed an upward variance was warranted. Chiasson's counsel noted her "objection for the record to the sentence [*sic*] upward variance."

Chiasson timely appealed.

4

## II.

We review *de novo* "whether a district court failed to comply with a Federal Rule of Criminal Procedure." *United States v. Ramirez-Gonzalez*, 840 F.3d 240, 246 (5th Cir. 2016). If the defendant fails to raise a specific objection to a substantively unreasonable sentence, then we review for plain error. *United States v. Zarco-Beiza*, 24 F.4th 477, 481 (5th Cir. 2022).

## III.

On appeal, Chiasson argues the district court committed two reversible errors. First, he says the court violated Federal Rule of Criminal Procedure 32 by permitting non-victim government witnesses to testify at his sentencing. Second, he claims the court wrongly relied on a "bare arrest" record to impose a substantively unreasonable sentence above the prescribed guidelines range. We consider each issue in turn.

## A.

Chiasson first contends the district court violated Rule 32 by permitting non-victim witnesses to testify on behalf of the government at sentencing. We disagree.

District courts have wide latitude to consider information that may be relevant to sentencing. For instance, 18 U.S.C. § 3661 categorically provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." Similarly, when considering a disputed "factor important to the sentencing determination," the Sentencing Guidelines permit district courts to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of

reliability to support its probable accuracy." U.S. Sent'g Guidelines Manual § 6A1.3(a) (U.S. Sent'g Comm'n 2021) (hereinafter U.S.S.G.). To be sure, though, facts supporting the imposed sentence "must be 'reasonably reliable.'" *United States v. Washington*, 232 F.3d 209, 209 (5th Cir. 2000) (per curiam) (unpublished) (citing *United States v. Shacklett*, 921 F.2d 580, 584–85 (5th Cir. 1991) (per curiam)).

Federal Rule of Criminal Procedure 32 addresses various circumstances in which a district court may or must permit certain persons to speak at sentencing. For example, Rule 32(i)(2) states: "The court may permit the parties to introduce evidence on the objections [to the PSR]." Fed. R. Crim. P. 32(i)(2). Rule 32(i)(4) specifies persons from whom the court "must" permit testimony: (1) "the defendant's attorney," (2) "the defendant personally," (3) the "attorney for the government," and (4) "any victim of the crime." Fed. R. Crim. P. 32(i)(4)(A), (B). This right to speak under Rule 32(i)(4) does not extend to other persons a defendant may want to testify on his behalf. *See United States v. Jackson*, 700 F.2d 181, 191 (5th Cir. 1983) (rejecting argument that Rule 32 "gives [a defendant] the right to present witnesses on his own behalf" because "no cases . . . have recognized such a right and we are aware of none").

Chiasson contends Rule 32 provides the only two avenues for witness testimony at sentencing. In his view, either (1) testimony is permitted to support or contest an objection to the PSR, *see* Fed. R. Crim. P. 32(i)(2), or (2) testimony is limited to the four persons permitted to speak by Rule 32(i)(4). In effect, Chiasson asks us to extend our decision in *Jackson*, which held that a defendant's Rule 32 right to allocute did not give him the right to call other witnesses on his behalf. Based on *Jackson*, Chiasson argues Rule 32 also limits the district court's discretion to permit non-victims to testify on the government's behalf. *See* 700 F.2d at 191. The testimony here, he argues, did not fall into either avenue provided by Rule 32 because there were no

objections to the PSR and because the witnesses were not persons described by Rule 32(i)(4).

Chiasson misreads Rule 32. By its terms, the Rule does not purport to restrict a district court's authority under 18 U.S.C. § 3661 to permit testimony relevant to sentencing. Rather, Rule 32 specifies classes of persons to whom "the court *must*" give the "[o]pportunity to [s]peak." *See* Fed. R. Crim P. 32(i)(4) (emphasis added). But the Rule does not say or imply that those persons are the only ones who may be *permitted* to testify at sentencing. To read the Rule that broadly would sharply reduce the "information" a district court may "receive and consider" in assessing a defendant's sentence, contrary to the express terms of 18 U.S.C. § 3661. *See ibid.* (providing "[n]o limitation shall be placed" on such information).[1] Chiasson cites no case supporting his reading of Rule 32, nor can we find one.

The cases Chiasson does cite fail to support his argument. As noted, our *Jackson* decision held that a defendant's personal right to allocate under Rule 32 does not *require* a court to permit testimony from other defense witnesses. 700 F.2d at 191. We face a different issue, however: whether a court can permit non-victim testimony offered by government witnesses. *Jackson* does not speak to that question.

Nor is Chiasson helped by *United States v. Johnson*, 956 F.3d 740 (5th Cir. 2020). There, we vacated a sentence because the district court relied on facts contained in a probation officer's undisclosed recommendation. *Id.* at

---

[1] *See also Roberts v. United States*, 445 U.S. 552, 556 (1980) ("[T]he fundamental sentencing principle [is] that a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." (cleaned up)); *Washington*, 232 F.3d at 209 (permitting non-victim testimony); U.S.S.G. § 6A1.3 (permitting courts to consider any "relevant information" if it has "sufficient indicia of reliability to support its probable accuracy").

742, 747. Contrary to Rule 32(e)(2), the defendant did not receive those facts "at least 35 days before sentencing," which deprived him of "reasonable notice . . . to engage in adversarial testing at sentencing." *Id.* at 744 (citations omitted). Here, again, we face a different situation. Chiasson does not claim he was denied notice under Rule 32(e)(2). Nor did the district court's variance rely on, or even reference, secret information obtained exclusively from government witnesses. To the contrary, before the two witnesses even testified, the court stated it was concerned that Chiasson's light state sentences did not adequately deter him from criminal conduct. Finally, as discussed below, Chiasson's PSR explained the circumstances behind each arrest or conviction that troubled the court, and Chiasson did not even object to the PSR.

In sum, the district court did not violate Rule 32 by allowing the two non-victim witnesses to testify on behalf of the government at sentencing.

## B.

Chiasson next argues that the district court wrongly relied on bare arrest records to vary his sentence upward. We disagree.

We review this issue for plain error because Chiasson failed to raise it at sentencing. Chiasson objected to his sentence only on two grounds: the previously-discussed Rule 32 issue and the substantive unreasonableness of the upward variance. Neither objection "reasonably 'informed the court of the legal error at issue'—*i.e.*, improper reliance on a bare arrest record." *Zarco-Beiza*, 24 F.4th at 482 (quoting *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020)).[2] "Accordingly, we will reverse only if [Chiasson]

_____

[2] We disagree with Chiasson that his Rule 32 argument preserved the objection because the witnesses went on to reference bare arrests. His Rule 32 objection argued that the witnesses should not have been allowed to testify at all, not that they would reference bare arrests. Chiasson could have objected to any references in their testimony to bare

shows error that is plain and affects his substantial rights, and even then, only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Carr*, 83 F.4th 267, 274 (5th Cir. 2023) (internal quotation marks and citation omitted).

A sentencing court may consider prior criminal conduct that resulted in arrest but not conviction, so long as the record contains information with "sufficient indicia of reliability" regarding the conduct at issue. U.S.S.G. § 6A1.3(a).[3] A court may not rely on bare arrest records, however. *Zarco-Beiza*, 24 F.4th at 482. "Bare" in this context means "the reference to the mere fact of an arrest—*i.e.* the date, charge, jurisdiction and disposition—without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest." *Ibid.* (citation omitted). A record is not bare, by contrast, "when it is accompanied by a factual recitation of the defendant's conduct that gave rise to a prior unadjudicated arrest and that factual recitation has an adequate evidentiary basis with sufficient indicia of reliability." *Ibid.* (internal quotation marks and citation omitted).

Chiasson argues the district court obviously erred by relying on his bare arrest records. Had the court not done so, Chiasson contends, there is a reasonable probability the court would not have varied upward.

Our analysis is guided by *Zarco-Beiza*, which held that a district court did not plainly err by referring to a bare arrest record at sentencing. 24 F.4th

---

arrests but did not. *See, e.g.*, *Zarco-Beiza*, 24 F.4th at 482 (bare arrest objections must specifically alert the court to "the legal error at issue").

[3] *See also United States v. Fields*, 932 F.3d 316, 320 (5th Cir. 2019) (holding "[i]t is well-established that prior criminal conduct not resulting in a conviction may be considered by the sentencing judge" if the information "bears sufficient indicia of reliability to support its probable accuracy" (internal quotation marks and citation omitted)).

at 483–84. We first identified what part of the PSR constituted a bare arrest record. There, it was a DWI charge that "contained only 'the date, charge, jurisdiction and disposition' and included no 'corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest.'" *Ibid.* (citation omitted). We then found that the court had, in fact, "relied on" that charge because its "comments at the sentencing hearing and . . . the statement of reasons demonstrate[d] that the pending DWI charge was at least one factor the district court relied upon at sentencing." *Ibid.* Nonetheless, the defendant failed "at the third prong of plain error review" because, viewing the whole of the sentencing hearing, it was not likely that the court would have reached a different sentence absent that improper reliance. *Id.* at 484.

Following *Zarco-Beiza*, we find no error here, plain or otherwise. Although the PSR and the witnesses' testimony did reference some bare arrests, Chiasson fails to show that the district court relied on any of those records in imposing sentence. *See id.* at 483 (finding reliance where the district court "specifically noted" or "referenced the pending DWI charge"). To the contrary, the record of the sentencing hearing shows there was ample factual support in the PSR for each prior arrest (or conviction) referenced by the court in imposing an upward variance. *See, e.g.*, *United States v. Whitehead*, 986 F.3d 547, 550 n.3 (5th Cir. 2021) (district court did not err "in considering [defendant's] arrest history" because it "was not dealing with a 'bare arrest record'" when "the PSR includes details about the facts underlying [defendant's] arrests, based on police reports").

Here are a couple of examples. The district court referenced Chiasson's arrest for being a felon in possession of a firearm. In support of that, the PSR explained that Chiasson was arrested in 2016 after "officers conducted a 'knock investigation' and the defendant was found to be in possession of an AR-15 style rifle." The court also noted that Chiasson had

No. 23-30053

multiple arrests for drug related offenses. There was also factual support for this reference in the PSR, which stated, for instance, that in 2008 officers found "a bag of suspected marijuana" while arresting Chiasson at a motel where he fraudulently used a credit card and had sex with a juvenile. Chiasson fails to identify any example of the court actually relying on a bare arrest record.[4] To the contrary, the record shows that the court varied upward—not because of Chiasson's bare arrests—but because of his extensive criminal history (including 14 adult convictions in a mere 33 years of life) and because he was obviously undeterred by his numerous lenient state sentences.

IV.

The sentence is AFFIRMED.

_____

[4] At oral argument, Chiasson contended the district court's references to arrests for controlled substance and a felon-in-possession offenses were to bare arrest records. We disagree. First, the district court referenced a dismissed arrest for possession of a controlled substance. But a paragraph in the PSR explains the circumstances leading up to a dismissed arrest for possession of marijuana and illegal use of controlled dangerous substances in the presence of a juvenile. Second, the district court referenced multiple arrests for being a felon in possession of a firearm. But the court had ample factual support for at least two such arrests: the instant arrest for being a felon in possession of a firearm and Chiasson's arrest for possessing an "AR-15 style rifle."