**Affirmed and Memorandum Opinion filed May 13, 2021.**



In The

# Fourteenth Court of Appeals

## NO. 14-19-00936-CR

**TERRANCE A. BOHANNA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 1558383**

## MEMORANDUM OPINION

Appellant Terrance C. Bohanna appeals his conviction for aggravated sexual assault. Tex. Penal Code Ann. § 22.021. All of appellant's issues in this appeal challenge the trial court's decisions admitting extraneous offense evidence during the punishment phase of his trial. We affirm.

Appellant was charged with aggravated sexual assault of the complainant, an adult female. During the guilt-innocence phase of appellant's sexual assault trial, among other witnesses, the State presented extraneous sexual assault testimony from "Carrie." At the conclusion of the evidence from the guilt-innocence phase of his trial, the jury found appellant guilty of aggravated sexual assault of the complainant. Appellant does not raise any issues on appeal challenging his conviction. The case then proceeded to the punishment phase of the trial where the State sought to admit evidence of two additional extraneous sexual assaults allegedly committed by appellant. The two alleged extraneous offense complainants were "Amy" and "Bianca."

The State did not call either Amy or Bianca to testify. The State planned to call two of the police officers who initially responded to the initial sexual assault reports, two emergency room nurses who participated in the sexual assault examinations of Amy and Bianca at Memorial Hermann Southwest Hospital, and a DNA forensic analyst from the Houston Forensic Science Center, to testify. The State also sought to admit into evidence the sexual assault nurse examiner ("SANE") reports prepared by the emergency room nurses as well as the reports prepared by the DNA analyst.

Appellant filed written objections to the State's use of this proffered evidence. Appellant initially objected that admitting the reports and the testimony of the responding police officers would violate his confrontation rights under the United States and Texas constitutions. Appellant also objected to the admission of the nurses' SANE reports arguing they did not meet the requirements of the

---

[1] Because appellant has not challenged the sufficiency of the evidence supporting his conviction, we include only those facts necessary to provide background for his issues on appeal.

hearsay exception for medical diagnosis or treatment found in Rule 803(4) of the Texas Rules of Evidence. Next, appellant objected to the admission of the State's proffered evidence asserting that the State's evidence did not meet the requirement that the State prove the extraneous offenses occurred by the beyond a reasonable doubt standard required by the Code of Criminal Procedure. In appellant's view, the State's proffered evidence was insufficient because the State did not intend to have the alleged victims testify that the sexual contact was not consensual. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 3(a)(1). Appellant additionally argued that the trial court should exclude the evidence because the prejudicial effect of admission substantially outweighed its probative value thereby violating Rule 403 of the Texas Rules of Evidence. Finally, appellant asserted that the admission of the evidence would violate his rights to due process and a fair trial under both the United States and Texas constitutions.[2]

The trial court conducted a gatekeeper hearing on the admissibility of the State's extraneous offense evidence outside the presence of the jury. At the beginning of the hearing, the trial court noted that it had previously overruled appellant's confrontation objection during proceedings off the record. At the conclusion of the gatekeeper hearing, the trial court ruled that it would, with the exception of requiring some redactions in one of the SANE reports, admit the challenged evidence.

During the punishment phase of appellant's trial, the State called five witnesses to establish appellant's extraneous sexual assaults of Amy and Bianca. They called two police officers, Israel Gonzalez and Nhat Huynh. The State also called two emergency room nurses, Yasmine Ricks and Lindsey Johnson. Finally,

---

[2] Appellant has not asserted an issue on appeal addressed to this final contention raised in the trial court.

3

the State called Jessica Powers, the DNA forensic analyst who analyzed samples taken from appellant and both Amy and Bianca.

The officers established Amy and Bianca's statements to them occurred as they arrived at each scene and while they were assessing the situation. Officer Gonzalez responded to a call for service at 3:30 a.m. or 4:00 a.m. He met Amy at the location and obtained her identification. He then had "a conversation with her about what [he was] being called out for," and after taking her report, he directed Amy to a hospital "to get a rape kit."

Officer Huynh responded to a call at 5:00 a.m. Huynh found Bianca "a bit shaken up" and "crying" with a cut to her left thumb, and dried blood on her arms and leg. After talking with Bianca, Huynh called the Houston Fire Department to assist. Huynh could not recall whether Bianca was transported by the Houston Fire Department.

The two emergency room nurses collected Amy and Bianca's statements as part of their medical forensic exams. Ricks assisted Amy, while Johnson helped Bianca. Both nurses testified that they collected the histories verbatim as Amy or Bianca talked about what had happened. Ricks testified that the medical history helps in the treatment of the patient. Johnson stated that the history helped her to look for injuries during the hospital examination. Ricks denied working for law enforcement and said that her duty was to care for her patient. Both nurses testified the reports were created as part of their duties as emergency room nurses.

The State sought to admit Amy's report. Appellant objected and the trial court required redactions in the report. Once again appellant objected, but the trial court overruled the objection. Amy's redacted SANE history reads in pertinent part:

4

[Patient] states the man pulled a knife out on her and demanded she get on her knees. [Patient] states the man forced her to have oral. Male forced her in the backseat to perform oral. The [patient] states she was then told to get on her back. [Patient] pleaded with the male to not have sex without condom. The male placed knife at [patient's] neck and proceeded to have intercourse. Penis inserted [patient] [sic] vagina with no condom. Penis inserted [patient] [sic] mouth when performing oral.

Bianca's SANE history reads similarly. It provides in pertinent part:

Before she knew it he pulled a knife and put it to her throat. The knife was long with ridges[.] Knife had a short han[dle.] [T]he patient states she tried to grab her phone and the assailant cut himself and got blood on her arm. Patient states the man told her to get on the floor. At the time she was on the floor she was on her knee's [sic]. The man told her to "suck his dick" she told him "no" he was grabbing her head she was fighting back [sic]. He forced her to lay back by putting the knife to her neck. He pulled her underwear down with his hands down to her knees. Patient says they were lying on concrete. "He pulled his underwear down I'm pretty sure." He did not put on a condom. Did not use lubrication. Patient says assailant spread her legs had the knife at her throat used other hand to hold her down. The encounter lasted about 5-10 mins. "I knew I had no way of getting him off of me because he was so heavy and it was really dark so I couldn[']t see anything. After he finished he told her to lay there and not to move. He ejaculated on her private.

Each nurse also sponsored their patient's SANE evidence kit.

Powers, the forensic DNA analyst, testified that her DNA analyses of the samples collected from Amy, Bianca, and appellant could not exclude appellant as the male contributor found in some of each victim's samples. Regarding Amy's DNA evidence, Powers concluded that appellant could not be excluded as a contributor to one of Amy's samples by a probability of "1 in 1.5 sextillion for Caucasians; 1 in 8.4 quintillion for African Americans; 1 in 280 quintillion for Hispanics; and 1 in 2.4 sextillion for Asians." Appellant was excluded as a contributor from the other samples.

5

As to Bianca's samples, Powers testified that she did not do the initial DNA analysis. Powers went on to testify that she reviewed the analysis, checked all paperwork and conclusions, and verified the data. Powers then did an independent analysis and prepared her own report from testing the data. The trial court overruled appellant's confrontation objection. Powers concluded that several of Bianca's samples indicated a male DNA profile. Powers then opined that after comparing appellant's known DNA profile to two of Bianca's samples, appellant could not be excluded as a contributor by a probability of "1 in 1.5 sextillion for Caucasians; 1 in 8.4 quintillion for African Americans; 1 in 280 quintillion for Hispanics; and 1 in 2.4 sextillion for Asians." With respect to numerous other samples, appellant could not be excluded by similar probabilities.

The State recalled the complainant to testify about the harm caused by the sexual assault at issue here. Finally, the State called an HPD detective, Loren Magness, to testify. Magness investigated the complainant's case and she sponsored the admission of the video of appellant's custodial statement where he denied having any sexual contact with the women despite being presented with Amy's and Bianca's DNA test results.

After appellant called five character witnesses, the parties rested. The trial court then instructed the jury, in relevant part, that it could consider the extraneous offenses only if it found the evidence showed them beyond a reasonable doubt. The jury assessed appellant's punishment at forty years in prison. The trial court sentenced appellant accordingly.

**ANALYSIS**

Appellant raises four issues on appeal all challenging the trial court's decision to admit the extraneous offense evidence summarized above. We address them in order.

6

**I.** **The trial court did not violate appellant's confrontation rights under the United States and Texas constitutions when it admitted the extraneous offense evidence.**

Appellant argues in his first issue that the trial court violated his confrontation rights under the United States and Texas constitutions when it admitted extraneous offense evidence from the police officers, nurses, SANE reports, and DNA analyst testimony and reports, because they all contained, or relied on, testimonial hearsay from Amy and Bianca, the two non-testifying extraneous-offense complainants.[3] Appellant goes on to argue that since Amy and Bianca did not testify, and the State did not prove their unavailability, the admission of the testimonial hearsay violated his confrontation rights. The State responds that the trial court committed no error because the challenged evidence was non-testimonial. We agree with the State.

**A.** **Standard of review and applicable law**

The Sixth Amendment provides that in all criminal prosecutions, the accused shall have the right to be confronted by the witnesses against him. U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 51 (2004), the Supreme Court of the United States held that the Sixth Amendment right of confrontation applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. *See Langham v. State*, 305 S.W.3d 568, 575 (Tex. Crim. App. 2010). The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford*, 541 U.S. at 68. This "provides a simple yet unforgiving rule: the State may not introduce a testimonial

---

[3] Because appellant has not provided any explanation or authority for construing the Texas Constitution as conferring greater protection in this area of the law than the federal constitution, we will not separately address his state constitutional argument. *See Black v. State*, 26 S.W.3d 895, 896 n.4 (Tex. Crim. App. 2000).

7

hearsay statement unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant." *Lee v. State*, 418 S.W.3d 892, 895 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Whether a particular out-of-court statement is testimonial is a question of law that we review de novo. *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would reasonably expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, or prior testimony;" and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Langham v. State*, 305 S.W.3d at 576.

The following principles are useful in determining whether particular statements are testimonial: (1) testimonial statements are official and formal in nature, (2) interaction with the police initiated by a witness or the victim is less likely to result in testimonial statements than if initiated by the police, (3) spontaneous statements to the police are not testimonial, and (4) responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial. *Villanueva v. State*, 576 S.W.3d 400, 405 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd); *Amador v. State*, 376 S.W.3d 339, 342–43 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Dixon v. State*, 244 S.W.3d 472, 482 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

Not all statements made to a police officer, however, are testimonial. *Spencer v. State*, 162 S.W.3d 877, 883 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). In *Spencer*, we determined that a complainant's initial statements to

police were not testimonial because they were made when the police arrived on the crime scene to assess and secure the scene, and they bore "no indicia of the formal, structured questions necessary for statements to be testimonial." *Id.*; *see also Wilson v. State*, 296 S.W.3d 140, 147 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (information solicited from the declarant was necessary to enable police to arrest the suspect and resolve the present emergency). With these principles in mind, we turn to each of the challenged categories of evidence.

**B.  The police officers' testimony did not violate appellant's confrontation rights.**

Appellant recognizes that Officer Gonzalez did not directly testify to anything that Amy said to him when he arrived at the scene. Appellant instead argues that Officer Gonzalez's testimony, that he instructed Amy to go to the hospital and get a rape kit, constitutes backdoor testimonial hearsay from a non-testifying declarant. *See Sanchez v. State*, 595 S.W.3d 331, 336 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (explaining that backdoor or indirect hearsay doctrine aims to prevent parties from eliciting testimony that indirectly reveals the substance of out-of-court statements). Appellant points out that during cross-examination, Gonzalez testified that Amy was calm, able to speak with him, and that he did not observe any injuries. In appellant's view, Gonzalez's testimony establishes there was no emergency, his questioning was interrogation as part of a police investigation, and the State was using his testimony as a surrogate for the missing Amy's testimony in violation of his confrontation rights.

Even if we assume that the challenged testimony was backdoor hearsay, the fact that Gonzalez did not observe any injuries on Amy upon his arrival and that she appeared calm at the scene is not dispositive. We instead conclude that it was non-testimonial for two reasons. First, the interaction was initiated by Amy's call

for service. *See Amador*, 376 S.W.3d at 342–43 (stating that whether interaction with police was initiated by victim is factor in determining whether statement is testimonial). Second, the interaction between Gonzalez and Amy occurred immediately after Gonzalez arrived at a potential crime scene in response to a call for service. *See id.* (stating that responses to preliminary questions by police at the scene of the crime while police are assessing and securing the scene are not testimonial). The fact Gonzalez did not observe that Amy had any injuries does not change the fact that the interaction occurred soon after he arrived at the scene and while he was assessing the situation. We therefore conclude that the challenged evidence was not testimonial. *See Spencer*, 162 S.W.3d at 883 (stating that complainant's responses to police questions were not testimonial because they occurred after the police arrived at the scene and while the police were assessing and securing the scene).

Appellant makes similar arguments with respect to Huynh's testimony regarding his interaction with Bianca upon his arrival at the scene in response to Bianca's call for service. We reject appellant's arguments regarding Huynh's testimony for the same reasons we rejected them with respect to Gonzalez's testimony.

C. **The nurses' testimony and reports did not violate appellant's confrontation rights.**

Appellant next challenges the admission of the testimony provided by the two nurses, as well the reports/sexual assault kits that each prepared. In appellant's view, the primary purpose of the hospital examinations and the reports resulting from those examinations was to provide law enforcement with information in anticipation of litigation. In support of his argument, appellant points out that (1) both Amy and Bianca signed consent forms entitled "Request for Medical,

Forensic Examination, Treatment, Collection of Evidence, and Release of Medical Records;" (2) both nurses' duties during the sexual assault examinations included evidence collection; (3) both Amy and Bianca signed releases authorizing the hospital to give their records to law enforcement; (4) both nurses signed a "Receipt of Information" establishing that they had turned the record over to law enforcement; and (5) both Amy and Bianca each signed an "Authorization for Examination and Payment" wherein they authorized the hospital to perform a sexual assault examination and to request payment for the "forensic evidence examination from the law enforcement jurisdiction to which the crime was reported." Finally, appellant points out that both Amy and Bianca were calm and cooperative during their respective examinations. Based on this, appellant asserts that the examinations performed on Amy and Bianca were to provide law enforcement with information in anticipation of litigation thereby making it testimonial, and the trial court's admission of it violated his confrontation rights. We disagree.

In making his argument, appellant ignores the nurses' testimony. Both testified that their involvement in the examinations and obtainment of a verbatim history from each complainant was for the purpose of diagnosis and treatment. For example, Ricks testified that the history she took from Amy provided "a background of the patient, things that we may need to look for while taking care of them." Ricks also explained that the history might reveal issues that would help them while performing the examination and while taking care of the patient in the future. Finally, when asked what her obligation was when seeing a patient, Ricks responded that it was "to take care of the patient." Johnson testified similarly. Johnson explained that when you get the part of the history detailing the incident, it "helps you figure out what's going on. Part of it is to look for injuries because me,

11

I'm treating, so looking for injuries on the patient, places that they say were touched or hit or cut or whatever; and then also to help kind of know which part of this examination is necessary and not necessary."

The Austin Court of Appeals recently addressed a sexual assault case with remarkably similar facts, issues, and arguments. *See Murray v. State*, 597 S.W.3d 964, 973–74 (Tex. App.—Austin 2020, pet. ref'd). In a thorough analysis rejecting each argument raised by the defendant asserting that the medical testimony and SANE reports at issue there were primarily for the purpose of law enforcement not medical treatment, the court determined that the challenged evidence was not testimonial and that its primary purpose was instead for medical treatment. *Id.* at 975. We find the Austin Court of Appeals' reasoning persuasive and adopt it here. Like the medical evidence at issue in *Murray*, we conclude that the challenged medical evidence in the present case was generated primarily for the purpose of medical treatment and not law enforcement. *Id.* at 973–75. It is therefore not testimonial, and the trial court did not violate appellant's confrontation rights when it overruled his objections and admitted it into evidence during the punishment phase of his trial. *See id.* at 974 ("Midgette's testimony establishes that the primary purpose of Tolleson's statements during the patient history was for medical treatment, making the statements non-testimonial.").

### D. The trial court did not violate appellant's confrontation rights when it admitted the DNA evidence.

Finally, appellant asserts that the DNA reports and analyst Powers' punishment phase testimony were testimonial hearsay. He then goes on to make a sufficiency challenge, arguing that the DNA evidence "did not, and could not, speak to whether it got there consensually and served only to further compromise appellant's right to confront his actual accusers." We do not review the sufficiency

of the evidence supporting an extraneous offense presented during the punishment phase of a trial. *Palomo v. State*, 352 S.W.3d 87, 94 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). With respect to appellant's confrontation argument, we conclude there was no violation. Here, Powers testified, and appellant had an opportunity to cross-examine her on her opinions regarding the DNA evidence. *See Paredes v. State*, 462 S.W.3d 510, 519 (Tex. Crim. App. 2015) (concluding that testing DNA expert "used non-testimonial information—computer-generated DNA data—to form an independent, testimonial opinion and appellant was given the opportunity to cross-examine her about her analysis."). With respect to the underlying, computer-generated DNA data, this data is non-testimonial. *See id.*

Having rejected each argument raised in appellant's first issue, we overrule the issue.

## II. The trial court did not abuse its discretion when performing its gatekeeper function for the admission of extraneous-offense evidence during the punishment phase of appellant's trial.

Appellant argues in his second issue that the trial court abused its discretion in the performance of its gatekeeper function when it admitted evidence of the two extraneous sexual assaults because the evidence was insufficient for the trial court to decide that the jury could conclude beyond a reasonable doubt that appellant committed them.

### A. Standard of review and applicable law

Section 3(a)(1) of article 37.07 of the Texas Code of Criminal Procedure allows the trial court to admit during the punishment phase evidence of any matter the court deems relevant to sentencing, including "evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible,

13

regardless of whether he has previously been charged with or finally convicted of the crime or act." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). The trial court decides the threshold issue of admissibility and may not admit extraneous-offense evidence unless the evidence is such that a jury rationally could find beyond a reasonable doubt that the defendant committed the offense or could be held criminally responsible for the offense. *See Smith v. State*, 227 S.W.3d 753, 759 (Tex. Crim. App. 2007). We review this decision by the trial court for an abuse of discretion. *Thompson v. State*, 425 S.W.3d 480, 490 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Ultimately, the factfinder decides whether the extraneous offense was proven beyond a reasonable doubt. *See Palomo*, 352 S.W.3d at 94–95.

**B.  The trial court did not abuse its discretion when it admitted the extraneous offense evidence.**

Appellant initially argues that the trial court abused its discretion because the cases the State relied on in the trial court can be factually or otherwise distinguished.[4] Because we will uphold a trial court's ruling on the admission or exclusion of evidence if the ruling was proper under any legal theory or basis applicable to the case, we are not limited to considering only the cases cited by the State in the trial court. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009) (addressing evidentiary rulings); *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002) ("And so it is that appellate courts may uphold a trial court's ruling on any legal theory or basis applicable to the case, but usually may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised.").

---

[4] Appellant also spends much time in his second issue rearguing his confrontation rights claim. We have already addressed, and rejected, that argument in response to his first issue on appeal.

Next, appellant seems to challenge the trial court's decision by making a sufficiency argument. Appellant asserts that the trial court abused its discretion because "[w]ithout the [extraneous-offense] complainants' testimony, the [S]tate's evidence proved only that the statements to their witnesses were made, not that they were true." We do not review the sufficiency of the evidence supporting an extraneous offense presented during the punishment phase of a trial. *Palomo*, 352 S.W.3d at 94. Instead, we generally construe such challenges as challenges to the admission of the evidence under an abuse of discretion standard. *Id.*

Appellant also argues that the trial court abused its discretion because the State's proffered evidence does not meet the requirements of Article 38.07 of the Code of Criminal Procedure. Article 38.07 is a rule of evidentiary sufficiency that establishes a corroboration requirement for adult sexual assault prosecutions. *Martinez v. State*, 178 S.W.3d 806, 813–14 (Tex. Crim. App. 2005). As a result, it applies only to the charged offense and is "inapplicable to the admissibility of extraneous offense evidence." *York v. State*, 258 S.W.3d 712, 715 (Tex. App.—Waco 2008, pet. ref'd). Finally, to the extent appellant argues the trial court abused its discretion because it could not have reasonably concluded that a jury could rationally find beyond a reasonable doubt that appellant committed the two extraneous offenses because no witness would directly testify on the lack of consent, we disagree. Circumstantial evidence can support a sexual assault conviction, including when the disputed issue is consent or the lack thereof. *See Limonta-Diaz v. State*, 593 S.W.3d 447, 460 (Tex. App.—Austin 2020, pet. ref'd) (affirming sexual assault conviction where lack of consent was established exclusively through circumstantial evidence and the reasonable inferences derived from it). Having reviewed the evidence proffered by the State, which we have summarized above, we conclude that the trial court did not abuse its discretion

15

when it admitted the extraneous offense evidence.  We overrule appellant's second issue.

**III.    The trial court did not abuse its discretion when it admitted statements made by the extraneous-offense complainants to the emergency room nurses.**

Appellant asserts in his third issue that the trial court abused its discretion when it admitted the extraneous offense complainants' statements to the emergency room nurses.  According to appellant, the statements were not reasonably pertinent to medical treatment or diagnosis nor did they meet the requirement appellant asserts is found in Rule 803(4) of the Texas Rules of Evidence, that the complainants recognized, or were admonished on, the importance of truthfulness in their statements to the nurses.[5]  We have already determined that the challenged evidence was for the purpose of medical treatment. We therefore conclude that the trial court did not abuse its discretion when it impliedly found that it met the requirements of Rule 803(4) and then admitted the evidence.  *See* Tex. R. Evid. 803(4) (providing that statements made for or reasonably pertinent to medical diagnosis or treatment are not excluded by the rule against hearsay); *Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) ("There is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply.").

The authority appellant cites does not change our analysis because we conclude that each case is distinguishable.  First, *State v. LaSalle* is distinguishable because there the court of appeals determined that the trial court did not abuse its

---

[5] Appellant references "804(3)" in his brief.  Based on his brief, argument, and citations, we conclude this is a typographical mistake and that he intended to reference Rule 803(4) instead.

discretion when it granted the defendant's motion for new trial so the trial court could reverse its original ruling admitting medical records as an exception to the hearsay rule. 135 S.W.3d 94, 97 (Tex. App.—Corpus Christi–Edinburg 2003, pet. ref'd). In *Mbugua v. State*, the court of appeals determined that the trial court did not abuse its discretion when it ordered redactions in certain medical records the defendant sought to admit to prove that he was injured while defending himself. 312 S.W.3d 657, 671 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The court stated that the defendant did not explain why it was important for his treatment that the medical professionals knew he was cut in a fight. *Id.* In the present case, however, each nurse explained, albeit briefly, that the information they sought was directly related to how they would treat each extraneous-offense complainant. Additionally, the medical records indicate that, based on the fact the extraneous-offense complainants described themselves as the victims of sexual assaults, they were referred for sexually transmitted disease screenings and sexual assault counseling. Finally, in *Sneed v. State*, this court determined that the trial court did not abuse its discretion when it excluded certain medical records because the trial court could have reasonably concluded that they were not reliable since they contained self-serving statements made after the defendant had an opportunity "to reflect and fabricate an explanation." 955 S.W.2d 451, 454 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). We are not presented with these situations here. Instead, the trial court, in the exercise of its discretion, admitted the challenged evidence. The fact that other judges, when presented with different facts, exercised their discretion to exclude evidence does not establish an abuse of discretion here. We overrule appellant's third issue.

IV. **The trial court did not abuse its discretion when it admitted the extraneous offense evidence over appellant's Rule 403 objection.**

In his fourth issue appellant asserts that the trial court abused its discretion

when it overruled his Rule 403 objection and admitted the extraneous offense evidence during the punishment phase of appellant's trial. *See* Tex. R. Evid. 403. We once again conclude that appellant has not shown an abuse of the trial court's discretion.

During the punishment phase, the State may offer evidence as to any matter the trial court deems relevant to sentencing, including evidence of an extraneous offense or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). Evidence is relevant to sentencing if the evidence is "helpful to the [factfinder] in determining the appropriate sentence for a particular defendant in a particular case." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006). But, even though a trial court possesses wide latitude in determining the admissibility of evidence presented during the punishment phase of a trial, relevant evidence is still subject to exclusion pursuant to Texas Rule of Evidence 403. *See* Tex. R. Evid. 403; *Ellison v. State*, 201 S.W.3d 714, 722 (Tex. Crim. App. 2006) (stating that trial judges must still operate within the bounds of Rules 401, 402, and 403 during the punishment phase of a trial). There is a presumption that the probative value of relevant evidence substantially outweighs the danger of unfair prejudice. *Andrade v. State*, 246 S.W.3d 217, 227 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). If the opponent of the evidence lodges an objection based on Rule 403, the trial court must weigh the probative value of the evidence against the potential for unfair prejudice. *Andrade*, 246 S.W.3d at 227. The criteria for making this determination include, but are not limited to, the following: (1) the probative value of the evidence; (2) the potential the evidence has to impress the jury in an irrational but nevertheless indelible way; (3) the time needed to develop the

evidence; and (4) the proponent's need for the evidence to prove a fact of consequence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). There is no requirement that the trial court perform the balancing test on the record, and when the record is silent, we must presume that the trial court performed the appropriate balancing test. *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

We review a trial court's decision to admit evidence during the punishment phase for an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). The trial court's decision will not be overturned unless it falls outside the zone of reasonable disagreement. *Id.*

Appellant initially argues that the trial court abused its discretion because it failed to conduct the Rule 403 balancing test on the record. We reject this argument because there is no requirement that the trial court conduct the balancing test on the record. *Kappel*, 402 S.W.3d at 494. Next, appellant attempts to reargue his first and second issues within his Rule 403 issue. We have already addressed, and rejected, those arguments, and we decline appellant's invitation to reexamine them here.

Appellant then addresses some of the Rule 403 factors. Appellant argues that the focus of the State's case during the punishment phase was the two extraneous offenses. Appellant next argues that the time used was excessive because the extraneous offense evidence had little probative value since the State failed to prove lack of consent. In appellant's view, because the evidence had little probative value, its only use was to inflame the jury into a greater punishment. Finally, appellant asserted that the State had little need of the evidence because they had the complainant testify again during the punishment phase and had introduced a third extraneous sexual assault during the guilt/innocence phase of the

19

trial. Appellant argues this evidence alone was sufficient to convince the jurors to impose a harsh sentence. The State responds that appellant has not shown that the trial court abused its discretion when it overruled his Rule 403 objection and admitted the extraneous offense evidence. We agree with the State.

Here, appellant had requested that he be placed on community supervision. *See* Tex. Code Crim. Proc. Ann. art. 42A.001 *et seq* (establishing procedures for community supervision). In addition, the offense carried a broad range of possible punishment. See Tex. Penal Code Ann. § 12.32 (setting punishment range for first degree felony offense between five years and life plus a possible fine); § 22.021(e). Based on these facts, the trial court could have reasonably determined that the extraneous offense evidence was strongly probative of appellant's character and that the State's need for the evidence was great because it demonstrated appellant had engaged in a pattern of continuing sexual assaults and was deserving of incarceration rather than community supervision. *See Harris v. State*, 572 S.W.3d 325, 337-38 (Tex. App.—Austin 2019, no pet.) (holding breadth of sentencing range, similarity of extraneous and charged offense, and close temporal proximity in time gave State great need at punishment); *Sanders v. State*, 422 S.W.3d 809, 815 (Tex. App.—Fort Worth 2014, pet. ref'd) (holding "remote" sexual assault of child relevant at punishment to define character and show "a pattern of serious, continuing criminal conduct"); *McGregor v. State*, 394 S.W.3d 90, 121 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (concluding modus operandi extraneous evidence "highly probative"). In addition, because the State's need was great, the trial court could also have reasonably concluded that the evidence did not consume an inordinate amount of trial time, was not duplicative, nor that it would mislead or confuse the jury. *Harris*, 572 S.W.3d at 338. The trial court could also have reasonably decided that the evidence did not present a risk that the jury would

20

reach an irrational punishment verdict. *Sanders*, 422 S.W. at 815 (noting that effect of extraneous evidence was not irrational). Finally, appellant's citation of *Beham v. State* does not change our analysis. 476 S.W.3d 724 (Tex. App.— Texarkana 2015, no pet.). Appellant cites *Beham* in support of his argument that the extraneous offense evidence unduly prejudiced him. However, as the court of appeals pointed out, the prosecution in *Beham* failed to produce any evidence of the underlying facts connecting Beham to the extraneous offenses. *Id.* at 737–38. That is not the situation here as the State introduced DNA evidence connecting appellant to the two extraneous offenses. Because appellant has not shown that the trial court abused its discretion when it overruled his Rule 403 objection, we overrule his fourth issue.

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's final judgment.


/s/    Jerry Zimmerer
Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).